MOHAN et al., Appellants,

v.

FETTEROLF et al., Appellees.

[Cite as *Mohan v. Fetterolf* (1995), 107 Ohio App.3d 167.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 95–T–5191.

Decided Oct. 30, 1995.

See also, 89 Ohio App. 3d 14, 623 N.E.2d 577.

168

*Keating, Keating & Kuzman* and *Daniel G. Keating,* for appellants.

*Dyson Schmidlin & Foulds Co., L.P.A.,* and *James J. Dyson,* for appellee Gideon A. Fetterolf, Jr.

*Teresa G. Stanford,* for appellee Ada Peterson.

*Kelly M. Burton,* for appellees Charles Hustead and Sharon Dennis.

*Davis & Young Co., L.P.A., Thomas W. Wright* and *Dennis R. Fogarty,* for appellee Michael G. Polk.

FORD, Presiding Judge.

Appellants, Terrence M. Mohan and Judith M. Mohan, appeal to this court following a granting of summary judgment in favor of appellees. The relevant facts of this appeal are as follows:

Mr. Mohan, a former member of the Newton Falls City Council, sued appellees, who were various members of the Newton Falls community, after they had successfully led a recall vote campaign to remove him from his city council seat.[1] Specifically, appellants sued each of the appellees for defamation due to allegedly false statements contained in the recall petitions. The petitions read, in pertinent part, that:

"The grounds upon which his/her recall is sought are:

"(1) Violation of Article III, Section 12 'Interference with appointments' of the Newton Falls Charter prohibiting councilmen from giving direct orders to a subordinate of the City Manager; and/or

"(2) Failure to hold open meetings under the 'Sunshine Law,' R.C. 121.22, on several occasions; and/or

"(3) Failure to fairly and properly represent the citizens of Newton Falls; and/or

"(4) Permitted Law Director, Debora Kay Witten, to influence his vote for a contract to hire her husband as City Prosecutor, creating an unlawful interest in a public contract; and/or

"(5) Failed to require that all expenditures of funds or contracting of indebtedness be enacted by ordinance as required by Article III, Section 15 of Newton Falls Charter."

Appellees filed motions for summary judgment, which were granted by the trial court. Appellants now appeal to this court, assigning the following single assignment of error:

"The trial court erred in granting summary judgment in favor of defendant-appellees."

Unlike traditional common-law defamation actions, a much higher standard of proof is required when the alleged defamation is against a person who is considered to be a "public figure." The United States Supreme Court in *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686,

---

1. An injunction was first sought in a prior action to prevent the recall election, also because of allegedly false statements that were contained in the recall petitions. This attempt to prevent the recall election failed.

created the test that must be applied in any case when a public figure wishes to sue for defamation. Even "[e]vidence of hatred, spite, vengefulness, or deliberate intention to harm can never, standing alone, warrant a verdict for the plaintiff in such cases * * *." *Varanese v. Gall* (1988), 35 Ohio St.3d 78, 79–80, 518 N.E.2d 1177, 1180. The focus in these cases is the defendant's attitude toward the degree of truth or falsity in the publication. *Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 342, 94 S.Ct. 2997, 3008, 41 L.Ed.2d 789, 806–807. In order to prove actionable defamation of a public figure, the plaintiff must show by *clear and convincing evidence* that the defendant(s) harbored actual malice while making the statements. *New York Times* at 285–286, 84 S.Ct. at 728–729, 11 L.Ed.2d at 709–710.

As the Supreme Court of Ohio stated in *Dupler v. Mansfield Journal Co., Inc.* (1980), 64 Ohio St.2d 116, 119, 18 O.O.3d 354, 356, 413 N.E.2d 1187, 1191:

"Since reckless disregard is not measured by lack of reasonable belief or of ordinary care, even evidence of negligence in failing to investigate the facts is insufficient to establish actual malice. Rather, since 'erroneous statement is inevitable in free debate, and * * * must be protected if the freedoms of expression are to have the "breathing space" that they "need * * * to survive," * * *' (*New York Times, supra,* at pages 271–72 [84 S.Ct. at 721, 11 L.Ed.2d at 701] ), '[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.' *St. Amant v. Thompson* (1968), 390 U.S. 727, 731 [88 S.Ct. 1323, 1325, 20 L.Ed.2d 262, 267]."

Therefore, because appellant was a public figure, appellants were required to submit evidential materials that the appellees in this case acted with actual malice when they circulated these petitions, in order to sustain a public figure defamation action. Summary judgment was appropriate if appellants failed to meet this obligation.

Civ.R. 56(C), in pertinent part, states:

" * * * Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact * * * show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

■ In *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, the Supreme Court of Ohio stated:

"A motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial. (*Celotex v. Catrett* [1986], 477 U.S. 317 [106 S.Ct. 2548, 91 L.Ed.2d 265], approved and followed.)" *Id.* at paragraph two of the syllabus.

■ We must now determine whether appellants met the burden of producing clear and convincing evidence of actual malice on the part of appellees, and then if the trial court properly granted summary judgment to appellees. For the following reasons, we find that summary judgment was appropriately granted.

■ A review of the record, in particular the deposition transcripts of appellees, demonstrates that appellees were unaware of the degree of accuracy of each of the allegations about appellant that was advanced in the recall petitions. Appellants did not establish through their pleadings and submissions the proper predicate for a defamation suit, and no genuine issue of material fact regarding such a claim is present in this case. Assuming that some of the allegations were untrue when made, appellants only met the pleading requirements of a common-law defamation action. The fundamental element for a public figure defamation case to be established is that the defendant knew or deliberately disregarded the truth in publishing the defamatory information. Sufficient facts were not alleged in this case to sustain such a high burden.

■ When persons enter public service, they necessarily become a target of criticism and scrutiny regarding their actions, as well as their inactions, on a wide spectrum of issues. A public figure cannot maintain a defamation action simply because he or she is the target of strong criticism or condemnation, absent a very strong showing of purposeful and malicious conduct on the part of the defendant. It is a necessary evil that public figures endure often unfair and, in some cases, untrue scrutiny.

■ The Supreme Court of Ohio held specifically in *Varanese*, 35 Ohio St.3d at 80, 518 N.E.2d at 1180–1181, that a public figure defamation plaintiff "must demonstrate, with convincing clarity, that the defendant published the defamatory statement either with actual knowledge that the statement was false, or with a high degree of awareness of its probable falsity." Having failed to submit materials sufficient to establish a genuine issue of material fact as to whether appellees had the requisite level of actual malice, appellants have failed to state a claim that could survive a motion for summary judgment. Accordingly, appellants' assignment is without merit, and is overruled.

Although the above discussion disposes of this case, we believe that another ground for dismissal should be briefly discussed. As was referenced earlier, this is not the first time that the truth and accuracy of these particular recall petitions have been questioned in a court of law. An injunction was previously sought to prevent the recall election due to the same alleged inaccuracies in the same petitions. As was the case here, the trial court declined to rule in favor of appellants. On appeal, this court stated in *Langley v. Fetterolf* (1993), 89 Ohio App.3d 14, 19, 623 N.E.2d 577, 580, while affirming the trial court's decision, that "[w]e note that no arguments as to a cause of action for defamation have been made." It is clear that appellant (Terrence Mohan) should have included a claim for defamation as part of the original action if he wished to assert it. Failure to include such a claim precludes its relitigation here, based on *res judicata.* This court has stated that:

"*Res judicata* requires a plaintiff to present *every ground* for relief in the first action, or be forever barred from asserting it. *National Amusements, Inc. v. City of Springdale* (1990), 53 Ohio St.3d 60, 62 [558 N.E.2d 1178, 1180]. 'It has long been the law of Ohio that "an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were or *might have been* litigated in a first lawsuit"' *Id.* at 62 [558 N.E.2d at 1180]. Thus, *res judicata* applies if a party or its privity *could have* raised an issue in the prior action, but did not do so." (Emphasis *sic.*) *Nutter v. Prine* (Sept. 30, 1993), Lake App. No. 92–L–157, unreported, at 6, 1993 WL 407316.

Accordingly, it is very likely that even had appellants alleged sufficient actual malice to sustain a defamation action, the doctrine of *res judicata* would have precluded the continued litigation of this suit.

The decision of the trial court is affirmed.

*Judgment affirmed.*

NADER, J., concurs.

CHRISTLEY, J., concurs separately.

CHRISTLEY, Judge, concurring.

I concur in the majority opinion and judgment, with the following additional thoughts which were occasioned by two recent opinions dealing with the First Amendment. In *Vail v. Plain Dealer Publishing Co.* (1995), 72 Ohio St.3d 279, 649 N.E.2d 182, a distinction was drawn between federal First Amendment rights and those same rights as defined by the Ohio Constitution.

Also in *Vail,* although not related to the logic of either the majority or dissenting opinions, is the occasional reference to "media" cases, indicating obliquely that there may be a distinction between First Amendment cases involving media rights and cases involving nonmedia rights, such as the right to

petition. See, also, *Philadelphia Newspapers, Inc. v. Hepps* (1986), 475 U.S. 767, 106 S.Ct. 1558, 89 L.Ed.2d 783. But, see, *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.* (1985), 472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593.[1]

The second case, *Colson v. Shaker Hts.* (N.D.Ohio 1995), 880 F.Supp. 1161, deals with a nonmedia case, and in fact, specifically addresses the immunity provided under the right to petition granted under the federal Constitution.[2] Judge Lesley Brooks Wells stated that "[t]he immunity provided by the First Amendment right to petition does not protect a defendant who uses illegal means to influence governmental action. See, *e.g., In re IBP Confidential Business Documents Litigation,* 755 F.2d 1300, 1313 (8th Cir.1984)." *Id.* at 1168. However, she determined that the challenged petitioning activities and irregularities in the petition itself were not illegal means or activities, and therefore were not actionable. "Illegal means" was not otherwise defined, except that Judge Wells stated that "[t]here is no allegation that the Association Defendants attempted to *defraud the signatories* to the petition or otherwise illegally influence them to sign the petitions." (Emphasis added.) *Id.* at 1168.

My conclusion is simply that *Vail* and *Colson* raise some interesting issues which we were unable to address in the instant case because they were not raised. Hopefully, succeeding cases will fill the void.

---

1. In *Dun,* the court affirmed on other grounds, the decision of the Vermont Supreme Court, which held that *Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789, was inapplicable to *nonmedia* defamation actions.

2. There the relief sought was under Sections 1982 *et seq.,* Title 42, U.S.Code, and not in defamation.