**KASSOUF, Appellant,**

v.

**CLEVELAND MAGAZINE CITY MAGAZINES, INC. et al., Appellees.**

[Cite as *Kassouf v. Cleveland Magazine City Magazines* (2001), 142 Ohio App.3d 413.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 2000–T–0062.

Decided May 14, 2001.

414

**416**

Randil J. Rudloff and Deborah S. Durniok, for appellant.

David L. Marburger and Rebecca C. Lutzko, for appellees.

NADER, Judge.

This is an accelerated calendar appeal. Appellant James Kassouf appeals a March 24, 2000 judgment entry by the Trumbull County Court of Common Pleas granting appellees' motion for summary judgment.

Appellee City Magazines, Inc. is the publisher of *Cleveland Magazine* and *Inside Business,* a supplement of *Cleveland Magazine.* In the November 1995

issue of *Inside Business*, City Magazines, Inc., published an article written by appellee Jay Miller titled "Impounded."

On November 10, 1998, appellant refiled a complaint against appellees alleging defamation. Appellant alleged that major portions of the article "Impounded" were false, that these false statements were defamatory, and that appellees had published these statements with actual malice. The article referred to appellant's indictment by a federal grand jury on twenty-one counts of filing false tax returns, four counts of attempted tax evasion, and one count of obstructing the Internal Revenue Service.

On December 30, 1999, appellees moved for summary judgment pursuant to Civ.R. 56(C). Appellees asserted three separate and independent grounds for their motion. First, appellees asserted that appellant waited several weeks after the expiration of the statute of limitation to file his original complaint alleging defamation. Second, they asserted that the article was protected by the "fair report privilege" because it was a substantially accurate summary of a federal grand jury indictment and a federal search warrant affidavit. Third, they asserted that appellant is a public figure who has failed to provide any evidence of actual malice. Appellees attached a comparison chart of what the federal indictment and federal search warrant affidavit stated and what they reported in the article. Appellees also included exhibits marked A through S to support their motion.

These exhibits included the thirty-four-page federal grand jury indictment, appellant's plea bargain agreement and the district court's judgment entry, the seventy-one-page federal affidavit in support of the search warrant, a copy of the article at issue, the affidavits of the business manager for Cleveland Magazines, Inc., and several others, and supporting case law. Also included was the affidavit of Jay Miller. In his affidavit, Jay Miller stated that when writing the article, he relied on the federal search warrant affidavit, the federal indictment, and previous published stories regarding appellant, his business, his projects, and his legal problems. Jay Miller further stated that he had no knowledge of any false statements in his article or any serious doubts about the truthfulness of any of the statements. In addition, appellees included over one hundred published articles by the Plain Dealer newspaper concerning appellant from May 3, 1983, through May 23, 1997.

On February 29, 2000, appellant filed a memorandum in opposition to appellees' motion for summary judgment. Appellant argued that he timely filed his original complaint within the one-year requirement because the publication date for the article was November 1995 and he filed his complaint in November 1996. Appellant added that even if appellees' arguments were sound, there existed a genuine issue of material fact as to the date of issuance of the publication. As to

appellees' second ground, appellant argued that the fair-report privilege did not protect the drawing of him that was made to look like an infamous, anti-American foreign political figure. Appellant also argued that there are statements in the article that are defamatory and were not in the indictment or the affidavit. Appellant asserted that the article was published maliciously and is therefore not protected by the privilege. Finally, as to appellees' third ground, appellant asserted that the compilations of newspaper articles from 1983 through 1997 do not necessarily show that he is a limited-purpose public figure. Appellant added that there is at least a genuine issue of material fact as to whether he is a limited-purpose public figure. Appellant added that even if he is a limited-purpose public figure, he has submitted sufficient evidence to show that the article was published with actual malice.

Attached to his memorandum in opposition was appellant's affidavit, in which he stated that the article contained false and defamatory statements about him. Appellant also stated that some of his business activities had received coverage in the media but that he was not notorious or well known to the average person in Cleveland or Trumbull County. Appellant added that the statements concerning his business knowledge and business operations were false and made with actual malice.

On March 20, 2000, appellees filed a reply to appellant's memorandum. Appellees asserted that appellant failed to provide any evidence to negate his public-figure status or to show that the article was published with actual malice. Appellees also argued that appellant failed to provide any evidence to contradict their accurate summary of the federal indictment and the federal affidavit. Finally, appellees asserted that the drawing did not contain any facts and that appellant had "invented his own farfetched interpretation of it."

On March 24, 2000, in a judgment entry, the trial court denied appellees' first ground for summary judgment, pertaining to the statute of limitations. However, the trial court granted appellees' motion for summary judgment on their second and third grounds. The trial court found that after construing the evidence most strongly in favor of appellant, reasonable minds could come to only one conclusion. The court stated that in reading the article in its context, in its entirety, and in its most innocent light, the information contained in the article was a substantially accurate summary of the indictment and the affidavit. Therefore, the article was protected under the fair-report privilege. The trial court also added that there was nothing actionable about the drawing of appellant. Finally, the court found that based on the submissions and exhibits, as a matter of law, appellant was a limited-purpose public figure. The court added that there was no evidence, much less clear and convincing evidence, of actual malice on the part of appellees.

Appellant filed a timely notice of appeal asserting two assignments of error:

"1. The trial court erred in granting summary judgment on the basis of a finding that the fair report privilege protects the article as a substantially accurate summary of a federal indictment and a search warrant affidavit."

"2. The trial court erred in granting summary judgment on the basis of a finding that appellant is a limited purpose public figure plaintiff and that appellant failed to present clear and convincing evidence of actual malice."

In his second assignment of error, appellant contends that the compilation of articles concerning him and his business activities do not necessarily show that he is a limited-purpose public figure. Appellant argues that there exists a genuine issue of material fact as to whether he is a limited-purpose public figure. Appellant also asserts that he submitted sufficient evidence that the article was published with actual malice.

█ On appeal, a court of review must conduct a *de novo* review of the grant or denial of summary judgment. *Tackas–Davis v. Concorde Castings* (Dec. 15, 2000), Lake App. No. 99–L–035, unreported, at 13, citing *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198, 199–200. A *de novo* review requires an appellate court to review the trial court's decision independently and without deference to it. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153, 1157–1158. Summary judgment is appropriate in the First Amendment area provided that the requirements of Civ.R. 56 are satisfied. *Dupler v. Mansfield Journal Co., Inc.* (1980), 64 Ohio St.2d 116, 120, 413 N.E.2d 1187, 1191.

Civ.R. 56 provides:

"(C) * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact * * * show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from the evidence or stipulation * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. * * *

"* * *

"(E) * * * *When a motion for summary judgment is made and supported* as provided in this rule, *an adverse party* may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, *by affidavit* or as otherwise provided in this rule, *must set forth specific facts showing that there is*

*a genuine issue for trial.* If the party does not so respond, summary judgment, if appropriate, shall be entered against the party." (Emphasis added.)

The Supreme Court of Ohio has held that summary judgment is proper when "(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *State ex rel. Morley v. Lordi* (1995), 72 Ohio St.3d 510, 512, 651 N.E.2d 937, 940, citing *Welco Indus., Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 346, 617 N.E.2d 1129, 1132.

Once a party meets his burden of supporting his motion for summary judgment with sufficient evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) imposes on the nonmoving party a reciprocal burden of responding by setting forth specific facts showing that a genuine issue exists to be litigated. *State ex rel. Zimmerman v. Tompkins* (1996), 75 Ohio St.3d 447, 449, 663 N.E.2d 639, 641–642; *Jackson v. Alert Fire & Safety Equip., Inc.* (1991), 58 Ohio St.3d 48, 51–52, 567 N.E.2d 1027, 1031. A genuine issue exists when a reasonable jury could return a verdict for the nonmoving party based on the evidence. *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211–212. The principal purpose behind Civ.R. 56(E) is to analyze the evidence in order to determine whether there exists an actual need for a trial. *Ormet Primary Aluminum Corp. v. Employers Ins. of Wausau* (2000), 88 Ohio St.3d 292, 300, 725 N.E.2d 646, 653.

Summary judgment is appropriate when a nonmoving party fails to produce evidence supporting an essential element of his claim for which he bears the burden of production at trial. *State ex rel. Morley, supra,* at 513, 651 N.E.2d at 940, citing *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus.

This court has held that a trial court must determine whether sufficient competent evidence has been presented by the party opposed to the motion on any issue for which that party bears the burden at trial. *Shafer v. Ford Motor Co., Inc.* (Feb. 28, 1997), Trumbull App. No. 96–T–5504, unreported, at 9, 1997 WL 374310, citing *Wing, supra,* 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, 1099. Examination of the evidence is necessary to enable the court to determine whether the nonmoving party has met this threshold standard. *Id.* at 9.

In the case *sub judice,* in order to determine whether summary judgment is proper, we must first determine appellant's classification in the context of a defamation action, which will determine appellant's burden of proof.

There are four classifications for a plaintiff who alleges defamation: "(1) a private person; (2) a public official; (3) a public figure; and (4) a limited purpose public figure." *Talley v. WHIO TV-7 & WDTN TV-2* (1998), 131 Ohio App.3d 164, 169, 722 N.E.2d 103, 106. The determination of whether or not a party is a public figure is a matter of law. *Milkovich v. News–Herald* (1984), 15 Ohio St.3d 292, 294, 15 OBR 424, 425–426, 473 N.E.2d 1191, 1193.

A public figure is a person whose position or activities thrust him into the center of an important public controversy. *Curtis Publishing Co. v. Butts* (1967), 388 U.S. 130, 155, 87 S.Ct. 1975, 1991, 18 L.Ed.2d 1094, 1111. A limited-purpose public figure is one who becomes a public figure for a specific range of issues by being drawn into or voluntarily injecting himself into a specific public controversy. *Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 351, 94 S.Ct. 2997, 3012–3013, 41 L.Ed.2d 789, 811–812. Two factors must be examined in order to determine whether a person is a limited-purpose public figure: (1) the person's participation in the controversy from which the alleged defamation arose and (2) whether that person has attained a general notoriety in the community as a result of that participation. *Talley, supra,* at 170, 722 N.E.2d at 107. Any person may become a limited-purpose public figure as to public issues or controversies into which he injects himself. *E. Canton Edn. Assn. v. McIntosh* (1999), 85 Ohio St.3d 465, 482, 709 N.E.2d 468, 480. However, a person does not become a limited-purpose public figure in regard to an alleged defamation arising from a crime that he committed. *Wolston v. Reader's Digest Assn., Inc.* (1979), 443 U.S. 157, 168, 99 S.Ct. 2701, 2707–2708, 61 L.Ed.2d 450, 460–461.

In a libel action, a plaintiff must prove that the written publication is false, that it was made with some degree of fault, and that it reflects injuriously on his reputation, exposes him to hatred, ridicule, disgrace, or shame, or affects him adversely in his profession or business. *A & B–Abell Elevator Co., Inc. v. Columbus/Cent. Ohio Bldg. & Const. Trades Council* (1995), 73 Ohio St.3d 1, 7, 651 N.E.2d 1283, 1289–1290.

Specifically, a private plaintiff must show that the statement was false and that the defendant was at least negligent in publishing the false statement. *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.* (1985), 472 U.S. 749, 766, 105 S.Ct. 2939, 2949, 86 L.Ed.2d 593, 607; *Dale v. Ohio Civ. Serv. Emp. Assn.* (1991), 57 Ohio St.3d 112, 114, 567 N.E.2d 253.

On the other hand, a public-figure plaintiff must show "actual malice" on the part of a defendant in publishing the false statement. *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 279–280, 84 S.Ct. 710, 725–726, 11 L.Ed.2d 686, 706–707; *Milkovich, supra,* at 294, 15 OBR at 425–426, 473 N.E.2d at 1193; *Mohan v. Fetterolf* (1995), 107 Ohio App.3d 167, 170, 667 N.E.2d 1278. "Actual

malice" is demonstrated by evidence that shows that the defendant published the statement with knowledge that it was false or that the defendant published the statement with reckless disregard as to whether it was false or not. *New York Times Co., supra,* at 280–281, 84 S.Ct. at 725–727, 11 L.Ed.2d 686. "There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson* (1968), 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262, 267. A plaintiff bears the burden of producing clear and convincing evidence of actual malice. *Gertz, supra,* 418 U.S. at 342, 94 S.Ct. at 3008, 41 L.Ed.2d at 806–807; *New York Times Co., supra,* 376 U.S. at 285–286, 84 S.Ct. at 728–729, 11 L.Ed.2d at 709–710.

■ Upon review of the over one hundred newspaper articles concerning appellant and his business, we conclude that appellant is a limited-purpose public figure. The trial court correctly found appellant to be a limited-purpose public figure as a matter of law. The articles cover appellant's personal and professional activities over a fourteen-year span. The articles covered topics such as the Cleveland city contract that was awarded to appellant for impounded vehicles in 1983. Controversy surrounded the city contract in relation to appellant's lots and the cancellation of the city contract in 1987. Articles also reported the bombing of appellant's lots and his parent's home, appellant's domestic violence and assault charges in 1988, appellant's long investigation with the IRS, appellant's million dollar lawsuit against a Cleveland city mayor, etc. One article even began, "If you drive a car in this town, you know the name Kassouf." Appellant was described as the "City parking czar" in another article. Appellant's business activities thrust him into the center of important public controversies.

Furthermore, appellant's affidavit did not set forth specific facts to support his contention that he was not a limited-purpose public figure; rather, appellant merely stated:

"Although some of my business activities have received coverage in the media, my business activities * * * were not of significance as to result in my notoriety or my being known to the average individual in Cleveland or in Trumbull County, Ohio. * * * I am neither notorious or well-known by the average individual in the community of Cleveland or in Trumbull County, Ohio."

■ Having determined that appellant is a limited-purpose public figure as a matter of law, we turn to the issue of whether appellant presented clear and convincing evidence of actual malice on the part of the appellees. We must make an independent examination of the record before us.

■ Pursuant to Civ.R. 56(C), appellees supported their motion for summary judgment with sufficient evidence showing appellant's status as a limited-purpose

public figure and the lack of actual malice. Therefore, pursuant to Civ.R. 56(E), appellant had the reciprocal burden of setting forth *specific facts* showing that a genuine issue existed for trial.

The trial court determined that appellant had not presented any evidence of actual malice, much less clear and convincing evidence of actual malice. We agree. Appellant failed to produce sufficient competent evidence showing actual malice, of which he bears the burden of proving at trial. Appellant's affidavit *failed* to list specific facts to support the notion that appellees had serious doubts as to the truthfulness of the article or that they knew of its falsity. Appellant's affidavit merely stated:

 "The article 'Impounded' contains false and defamatory statements about me. * * * It is *my belief* that the statements made in the article "Impounded" were made with actual malice, as they were made with a reckless disregard as to their truth or falsity." (Emphasis added.)

Furthermore, appellant's memorandum in opposition stated that he "has submitted sufficient evidence that the publication was made with actual malice"; however, appellant had failed to produce any evidence from which a jury could find that actual malice had been established. It is not enough that appellant believes that the statements contained in the article are false; rather, appellant must prove, through clear and convincing evidence, actual malice on the part of appellees.

 Even evidence of negligence in failing to investigate the facts is insufficient to establish actual malice. Assuming that some statements were untrue, appellant failed to provide any evidence that appellees knew or deliberately disregarded the truth when publishing the article. Appellant failed to sustain his higher burden of proof.

Having reexamined the evidence before the trial court in a light most favorable to appellant, we believe that reasonable minds could come to only one conclusion, and that conclusion is adverse to appellant. The trial court correctly granted appellees' motion for summary judgment under their third ground, as a matter of law. Appellant, a limited-purpose public figure, presented *no evidence* that would demonstrate actual malice on the part of the appellees. Thus, appellant's second assignment of error is without merit.

In light of the conclusion that summary judgment was proper under appellees' third reason presented to the trial court, pursuant to App.R. 12(A)(c), appellant's first assignment of error is moot; therefore, it will not be addressed. We affirm the judgment of the trial court.

*Judgment affirmed.*

WILLIAM M. O'NEILL, P.J., and CHRISTLEY, J., concur.