GRABOW, Appellant,

v.

KING MEDIA ENTERPRISES, INC. et al., Appellees.

[Cite as Grabow v. King Media Enterprises, Inc., 156 Ohio App.3d 443, 2004-Ohio-1122.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 83109.

Decided March 11, 2004.

_____

444

Steiner & Stern Co., L.P.A., and Howard S. Stern; Reddy, Grau & Meek and Ross S. Cirincione, for appellant.

Forbes, Fields & Associates, George L. Forbes, Dennis N. Loconti and Scott H. Schooler, for appellees.

FRANK D. CELEBREZZE JR., Judge.

{¶ 1} The appellant, Raymond J. Grabow, appeals from the trial court's grant of summary judgment in favor of the appellees, King Media Enterprises, Inc. et al., regarding his claim of defamation resulting from the publication of an editorial in the appellees' newspaper. We affirm the grant of summary judgment by the trial court, albeit for different reasons.

{¶ 2} Raymond J. Grabow ("Grabow") is the former Mayor of Warrensville Heights, Ohio. On August 28, 1997, he was indicted on multiple counts of theft in office, unauthorized access to a computer, and unauthorized use of computer property. On February 5, 1998, on the recommendation of the prosecutor, count 1 and count 12 were amended to charge Grabow with soliciting or receiving improper compensation while in office, in violation of R.C. 2921.43(A)(2). The remaining 13 counts were nolled. Grabow pleaded guilty to counts 1 and 12, both first degree misdemeanors, and was ordered to pay $2,000 in restitution to Warrensville Heights, plus $200 in fines and court costs. Grabow subsequently resigned from public office on March 31, 1998.

{¶ 3} The Call & Post, *"Ohio's African American Newspaper,"* is owned by King Media Enterprises, Inc. It is a weekly news publication of general circulation within the cities of Cleveland, Columbus, and Cincinnati. Appellee Don King is the Publisher of the Call & Post, appellee Michael House is the president, appellee Connie Harper is the executive vice-president and editor, and appellee John Lenear is the advertising director and editorial writer of the newspaper.

{¶ 4} In the September 7, 2000 edition of the Call & Post, appellee John Lenear wrote an editorial concerning the new Mayor of Warrensville Heights, Marcia Fudge, and commented about how the Warrensville Heights City Council was putting her "through the wringer." Lenear further stated in the editorial that former Mayor Raymond Grabow "was a convicted felon who stole city assets."

{¶ 5} On September 29, 2000, without first contacting the Call & Post about the editorial, Grabow filed suit against King Media Enterprises Inc., d.b.a. Call & Post, Don King, Michael House, and Connie Harper, claiming that the statement which appeared in the September 7, 2000 edition of the Call & Post—"a convicted felon who stole city assets"—was false and defamatory.

{¶ 6} On December 14, 2000, the defendants printed a retraction in the Call & Post, which stated that former Mayor Raymond Grabow was convicted of two misdemeanors and not a felony. This retraction was published without any demand from Grabow.

{¶ 7} On May 16, 2001, Grabow filed an amended complaint that added the editorial's writer, John Lenear, as a defendant. Grabow voluntarily dismissed his lawsuit on March 13, 2002, but then refiled the same suit on April 26, 2002.

{¶ 8} On January 10, 2003, after discovery was completed, the defendants moved for summary judgment; Grabow moved for partial summary judgment, claiming that allegations of criminal conduct are libel per se. On June 4, 2003, the trial court granted the defendants' motion for summary judgment and denied Grabow's motion for partial summary judgment. The trial court held, "Plaintiff has failed to produce clear and convincing evidence of actual malice necessary to prevail on a claim of defamation against a public figure as required in *Kassouf v. Cleveland City Magazines, Inc.* [2001] 142 Ohio App.3d 413 [755 N.E.2d 976]."

{¶ 9} Grabow files this timely appeal presenting two assignments of error for review.

{¶ 10} "I. THE TRIAL COURT ERRED IN GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT SINCE A GENUINE ISSUE OF MATERIAL FACT EXISTED AS TO THE ACTUAL KNOWLEDGE OR RECKLESS INDIFFERENCE OF APPELLEE WHO WROTE AND PUBLISHED THE FALSE AND DEFAMATORY ALLEGATION THAT APPELLANT WAS A 'CONVICTED FELON WHO STOLE CITY ASSETS.' "

{¶ 11} "II. THE TRIAL COURT ERRED IN APPLYING THE ACTUAL MALICE STANDARD TO THE DEFAMATORY STATEMENT OF APPELLEES SINCE APPELLANT WAS NO LONGER A PUBLIC FIGURE AND THUS ERRED IN GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT AND IN DENYING APPELLANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT."

{¶ 12} In his first assignment of error, the appellant claims that the trial court erred by granting summary judgment in favor of the appellees because a genuine issue of material fact existed as to whether the editorial was published with actual malice. Specifically, the appellant claims that the deposition testimony of appellee Michael House reveals that appellee John Lenear, the writer of the editorial, told House that he had researched whether the appellant was actually a convicted felon. The appellant claims that a reasonable jury could infer from this statement that Lenear could have known the statement was false yet published it anyway.

{¶ 13} "Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come but to one conclusion, and viewing such evidence most strongly in favor of

the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

{¶ 14} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 604 N.E.2d 138.

{¶ 15} In *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264, the Ohio Supreme Court modified and/or clarified the summary judgment standard as applied in *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095. Under *Dresher*, "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, *and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or material element of the nonmoving party's claim.*" (Emphasis sic.) Id., 75 Ohio St.3d at 296, 662 N.E.2d 264. The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id., 75 Ohio St.3d at 293, 662 N.E.2d 264. The nonmoving party must set forth "specific facts" by the means listed in Civ.R. 56(C) showing a genuine issue for trial exists. Id.

{¶ 16} This court reviews the lower court's granting of summary judgment de novo. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 622 N.E.2d 1153. An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party * * *. [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." *Saunders v. McFaul* (1990), 71 Ohio App.3d 46, 50, 593 N.E.2d 24; *Link v. Leadworks Corp.* (1992), 79 Ohio App.3d 735, 741, 607 N.E.2d 1140.

{¶ 17} In a libel action, a plaintiff must prove that the written publication is false and that it was made with some degree of fault, which reflects injuriously on his reputation, exposes him to hatred, ridicule, disgrace, shame, or affects him adversely in his profession or business. *Kassouf v. Cleveland Magazine City Magazines, Inc.* (2001), 142 Ohio App.3d 413, 755 N.E.2d 976, citing *A & B–Abell Elevator Co., Inc. v. Columbus/Central Ohio Bldg. & Constr. Trades Council* (1995), 73 Ohio St.3d 1, 7, 651 N.E.2d 1283.

{¶ 18} The United States Supreme Court in *Milkovich v. Lorain Journal Co.* (1990), 497 U.S. 1, 19, 110 S.Ct. 2695, 111 L.Ed.2d 1, held that "opinion" based defamation is not afforded any additional protection under the First Amendment

to the United States Constitution as compared to "fact" based defamation that could be proven untrue. However, expressions of opinion are protected under Section 11, Article I of the Ohio Constitution as a valid exercise of freedom of the press. *Vail v. The Plain Dealer* (1995), 72 Ohio St.3d 279, 281, 649 N.E.2d 182; see, also, *Scott v. News–Herald* (1986), 25 Ohio St.3d 243, 244–245, 25 OBR 302, 496 N.E.2d 699. Section 11, Article I of the Ohio Constitution states that every citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of the right; and no law shall be passed to restrain or abridge the liberty of speech or of the press.

 {¶ 19} When determining whether speech is protected opinion, a court must consider the totality of the circumstances. *Vail v. The Plain Dealer*, supra. Specifically, a court should consider the specific language at issue, whether the statement is verifiable, the general context of the statement, and the broader context in which the statement appeared. *Scott v. News–Herald* (1986), 25 Ohio St.3d 243, 250, 25 OBR 302, 496 N.E.2d 699. The application of this test is fluid. *Vail*, supra, 72 Ohio St.3d at 282, 649 N.E.2d 182. The weight given to any one factor will necessarily vary depending on the circumstances of each case. Id.

██ {¶ 20} The determination of whether allegedly defamatory language is opinion or fact is a question of law to be decided by the court. Id., 25 Ohio St.3d at 250, 25 OBR 302, 496 N.E.2d 699. The meaning of an allegedly defamatory statement is the meaning that a reasonable reader would attach to the statement. *McKimm v. Ohio Elections Comm.* (2000), 89 Ohio St.3d 139, 145, 729 N.E.2d 364. If the court determines that the defamatory language used is opinion and not fact under the totality-of-the-circumstances test, the inquiry is at an end; it is constitutionally protected speech in Ohio. *Vail*, supra, 72 Ohio St.3d at 281, 649 N.E.2d 182.

█ {¶ 21} Truth is a complete defense to a claim for defamation. *Sethi v. WFMJ Television, Inc.* (1999), 134 Ohio App.3d 796, 806, 732 N.E.2d 451, citing *Ed Schory & Sons, Inc. v. Soc. Natl. Bank* (1996), 75 Ohio St.3d 433, 445, 662 N.E.2d 1074.

{¶ 22} In the instant matter, the editorial published by the *Call & Post* in which Grabow claimed he was defamed states in part:

{¶ 23} "**OUR OPINION**

{¶ 24} "Warrensville Council Starts down path blazed by others

{¶ 25} "Warrensville Heights residents have a job to do to keep their city from falling into the same snare that brought East Cleveland to its knees 20 years ago. When departing white leaders tried to pick their Black successors in East

Cleveland, the mess made by the East Cleveland City Commission and a variety of self styled leaders still lingers.

{¶ 26} "The Warrensville City Council's continuing effort to run the city, instead of making policy, is a manifestation of the same ignorance imported from East Cleveland. The Warrensville Council has taken to second guessing, back-stabbing, and interfering in the daily operation of the city. This is a marked change of conduct for essentially the same cast of characters who sucked up to and sought favor with Mayor Raymond Grabow.

{¶ 27} "Grabow, the deposed white mayor of the 90 percent Black city, is now a convicted felon who stole city assets, violated the law and used a law enforcement system computer to spy on foes and members of the council. Council members, acting like good girls and boys, didn't issue one complaint that Grabow had not preapproved.

{¶ 28} "Now, this suddenly strong group of Black people, just days from addressing White boys as mister, are putting Mayor Marcia Fudge, a black women and very popular choice of the voters, through the wringer.

{¶ 29} "* * *

{¶ 30} "The council then rejected the recommendations of the Charter Review Commission and put some self-serving legislation on the November ballot to give them huge percentage pay raises and double some of the terms in office, just like East Cleveland.

{¶ 31} "* * *

{¶ 32} "At every step, the council has had more meaningful information that [sic] Grabow provided them in their entire terms in council. The council's response is to propose that Fudge no longer preside over City Council, a role they never objected to while boss Grabow ruled the plantation. Now that the natives are free, it's deja vu all over again, East Cleveland style. The Warrens-ville Heights City Council needs to understand the election is over and Fudge blew them away."

{¶ 33} The appellant claims that the statement, "a convicted felon who stole city assets," is false and actionable as defamation.

{¶ 34} We will apply the totality-of-the-circumstances four-part test found in *Scott* and *Vail,* supra, to determine whether the statement printed by the Call & Post is defamatory fact or protected opinion. First, we examine the specific language at issue. We must consider whether an ordinary, reasonable reader would view the words used to be language that normally conveys information of a factual nature or merely hype and opinion. A reasonable, ordinary reader could construe from this statement that the appellant is a

"convicted felon who stole city assets." The first element of the *Scott* test would lean towards actionability. The statement has a clear meaning and is not ambiguous. However, this factor can be outweighed by other factors under the totality-of-the-circumstances test.

{¶ 35} Moreover, we also note that the appellant was convicted of receiving improper compensation while in office and was ordered to pay $2,000 in restitution to the city of Warrensville Heights. The appellant was originally charged with theft in office, which was reduced to a lesser charge of receiving improper compensation. The statement that appellant "stole city assets" is not false. We will not engage in semantics and entertain that, because the appellant was not convicted of a per se theft offense under the Revised Code, he did not steal city assets. Therefore, the only possible defamatory statement made is that the appellant was a convicted felon rather than being a convicted misdemeanant.

{¶ 36} Allegations of criminal conduct, when published in written form, are generally libel per se if the allegations of criminal conduct are not true. *Gilbert v. WNIR 100 FM* (2001), 142 Ohio App.3d 725, 742, 756 N.E.2d 1263. The written allegations of criminal conduct set forth against the appellant are essentially true. The only incorrect statement printed by the appellee is that the appellant was convicted of a felony rather than a misdemeanor.

{¶ 37} Second, we will examine whether the statement is verifiable. The statement made by the appellee, that the appellant is a "convicted felon," is capable of being proved true or untrue. A reasonable reader could believe that this statement contains specific factual content. The second factor weighs in favor of fact over opinion and is actionable.

{¶ 38} The third factor examines the immediate context in which the allegedly defamatory statement was made. We will assess the entire editorial in order to determine whether the language surrounding the defamatory statement would put the reasonable reader on notice that the language contained therein is opinion and not fact. There is no question that this writing was an editorial written to express the author's opinion. The editorial begins with a large, bold font title, printed in all capital letters, stating, "**OUR OPINION.**" A reasonable reader would be put on notice that the message conveyed would be the opinion of the writer. Considering the defamatory statement in the context of the entire editorial, we conclude that an average reader would be unlikely to infer that the statement was meant to be factual.

{¶ 39} Furthermore, the editorial as a whole does not focus on the appellant. It was written in support of the current mayor and was meant to criticize the Warrensville Heights City Council and its treatment of the new mayor as compared to its behavior when the appellant was mayor. The editorial was a call

to action in support of the new mayor and was meant to cause outrage in the reader relating to how the new mayor was being treated by the city council. It is obvious that when the editorial is read as a whole, it was meant to be persuasive and not factual. The third factor weighs strongly against actionability.

{¶ 40} The fourth factor of the *Scott* test considers the broader context in which the statement appeared. We must consider whether the entire column is characterized as statements of objective facts or subjective hyperbole. The general tone of the column is sarcastic, more typical of persuasive speech than of factual reporting. The writer of the editorial has a reputation as an opinionated columnist; this should also be considered. The article refers to the appellant as the "boss" who "ruled the plantation" and the city council addressing "White boys as mister." These analogies are definitely subjective and are usually not found in factual reporting. The editorial also makes race-based inferences and allegations about former white leaders. A reasonable reader would interpret the statements made in the entire editorial as being opinion rather than fact. The fourth factor of the *Scott* test weighs strongly against actionability.

{¶ 41} Based on the totality of the circumstances, we are convinced that the ordinary reader would accept the Call & Post's September 7, 2000 editorial as the opinion of the author. Having found that this editorial is a constitutionally protected opinion rather than fact under Ohio Law, our inquiry is at an end. The appellant's second assignment of error is rendered moot.

{¶ 42} The judgment is affirmed.

Judgment affirmed.

MICHAEL J. CORRIGAN, A.J., and ANNE L. KILBANE, J., concur.