OPINION
{¶ 1} Charles S. Spingola, plaintiff-appellant, appeals from a judgment of the Franklin County Court of Common Pleas, in which the court granted the motion for summary judgment filed by Andrea Critchet, Stonewall Columbus, Inc. ("Stonewall"), and Jeff Redfield, defendants-appellees.
 {¶ 2} On June 23, 2001, the 2001 Columbus Pride Parade was held in downtown Columbus, Ohio. Appellant attended the parade, and, at some point, appellant announced his intent to light a flag on fire. Critchet, who was standing near appellant at this time, was serving as a volunteer security supervisor for Stonewall, which sponsored the event and organized security for the parade. With local news photographers filming and other media personnel standing nearby, appellant requested a canister from an associate, Tom Meyer. A flammable liquid, which appellant claims was lamp oil, was then poured from the canister onto the flag. Critchet claimed appellant doused her legs, hands, and face with the liquid and told her she was going to "burn in hell." Appellant then used a match to light the flag. Appellant was subsequently arrested and taken to a police cruiser.
 {¶ 3} Critchet immediately told officers that appellant had doused her with gasoline, and she stated over her headset radio that she had been doused and she needed help. Critchet claimed her legs had a burning sensation and had welts on them. Bystanders splashed water on her legs, and she was treated by paramedics. Redfield, the executive director of Stonewall, arrived on the scene about ten minutes after appellant was arrested. Critchet told Redfield, city of Columbus police officers, and city of Columbus Fire Department investigators that appellant had intentionally splashed her with gasoline. Redfield stated he noticed red irritation on Critchet's legs.
 {¶ 4} On June 25, 2001, Redfield issued a press release on behalf of Stonewall, which stated that the only incident that marred the event was a demonstration by "an individual" who burned his own flag. The release indicated that the individual's "mean-spirited" and harmful actions resulted in a security leader getting gasoline poured on her. The release called his actions illegal. Redfield was also quoted by a periodical as stating that appellant was getting "more and more violent every year[.]"
 {¶ 5} In August 2001, the city of Columbus filed charges against appellant for assault and aggravated menacing. He was later found not guilty of both charges pursuant to a jury trial.
 {¶ 6} On June 24, 2002, appellant filed a complaint against numerous defendants seeking monetary damages for defamation. After several subsequent amendments and dismissals, Critchet, Stonewall, and Redfield (collectively "appellees") remained as defendants for purposes of the present case. On May 30, 2003, appellees filed a motion for summary judgment. On August 25, 2005, the trial court issued a decision and entry, in which the court granted appellees' motion for summary judgment. Appellant appealed the judgment; however, this court dismissed the appeal for lack of a final appealable order. The trial court issued a subsequent judgment in April 2006. Appellant appeals this judgment of the trial court, asserting the following three assignments of error:
 [I.] THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT ANDREA CRITCHET.
 [II] THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT JEFF REDFIELD.
 [III] THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT STONEWALL COLUMBUS.
 {¶ 7} Appellant argues in his first assignment of error that the trial court erred in granting summary judgment to Critchet on his defamation claim. When reviewing a motion for summary judgment, courts must proceed cautiously and award summary judgment only when appropriate. Franks v.The Lima News (1996), 109 Ohio App.3d 408. Civ.R. 56(C) provides that, before summary judgment may be granted, it must be determined that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the non-moving party, that conclusion is adverse to the non-moving party.State ex rel. Howard v. Ferreri (1994), 70 Ohio St.3d 587, 589. When reviewing the judgment of the trial court, an appellate court reviews the case de novo. Franks, supra. Summary judgment procedures are particularly appropriate when addressing First Amendment free speech issues in a defamation matter. Dupler v. Mansfield Journal (1980), 64 Ohio St.2d 116, 120.
 {¶ 8} Defamation is a false statement published by a defendant acting with the required degree of fault that injures a person's reputation, exposes the person to public hatred, contempt, ridicule, shame or disgrace, or adversely affects the person's profession. A B-AbellElevator Co. v. Columbus/Cent. Ohio Bldg. and Constr. TradesCouncil (1995), 73 Ohio St.3d 1, 7. Generally speaking, defamation can come in two forms: slander, which is spoken; and libel, which is written. See Dale v. Ohio Civ. Serv. Emp. Assn. (1991),57 Ohio St.3d 112. The elements of a defamation action, whether slander or libel, are that: (1) the defendant made a false and defamatory statement concerning another; (2) that the false statement was published; (3) that the plaintiff was injured; and (4) that the defendant acted with the required degree of fault. Celebrezze v. Dayton Newspapers, Inc. (1988),41 Ohio App.3d 343. The entry of summary judgment in a defendant's favor is appropriate in a defamation action if it appears, upon the uncontroverted facts of the record, that any one of the above critical elements of a defamation case cannot be established with convincing clarity. Temethy v. Huntington Bancshares, Inc., Cuyahoga App. No. 83291, 2004-Ohio-1253.
 {¶ 9} The trial court found that Critchet's statements to police and arson investigators were absolutely privileged. The trial court then found that, even if the statements to police and arson investigators were subject only to a qualified privilege, which may be defeated by a showing of actual malice, appellant had failed to establish that Critchet acted with actual malice. On appeal, appellant claims that absolute privilege does not apply to Critchet's statements to the police and arson investigators, and claims that, if a qualified privilege applies, he sufficiently demonstrated Critchet acted with actual malice. In addition, appellant argues that the trial court addressed only the statements Critchet made to investigators but failed to address the same defamatory statements Critchet repeated to other non-investigating individuals, including Redfield and other security volunteers.
 {¶ 10} However, we find we need not address whether appellant was subject to a qualified or absolute privilege, because appellant failed to demonstrate that Critchet's statements, to both the investigating authorities and non-investigating individuals, were made with the requisite degree of fault. Concerning the publisher's required degree of fault, such varies depending on the status of the plaintiff, ranging from a private individual to a public figure. Gertz v. Welch, Inc.
(1974), 418 U.S. 323, 94 S.Ct. 2997. When the plaintiff is a public figure, a successful defamation claim requires clear and convincing evidence that the statement was published with "actual malice." New YorkTimes Co. v. Sullivan (1964), 376 U.S. 254, 280, 84 S.Ct. 710. In addition, courts have created a "limited-purpose public figure," which is a plaintiff who becomes a public figure for a specific range of issues from which the person gains general notoriety in the community.Gertz, supra, at 351. A limited-purpose public figure also has to prove that the defamatory statement was made with actual malice. SeeKassouf v. Cleveland Magazine City Magazines (2001),142 Ohio App.3d 413. It is undisputed, here, that appellant was at least a limited-purpose public figure for purposes of the present case.
 {¶ 11} To demonstrate actual malice, the plaintiff must prove that the statement was made with knowledge that it was false, or with reckless disregard of whether it was false or not. New York Times, at 280. To establish reckless disregard, the plaintiff must present clear and convincing evidence that the false statements were made with a high degree of awareness of their probable falsity, Garrison v.Louisiana (1964), 379 U.S. 64, 74, 85 S.Ct. 209, or that the defendant in fact entertained serious doubts as to the truth of his publication.St. Amant v. Thompson (1968), 390 U.S. 727, 731, 88 S.Ct. 1323. Whether the evidence in the record supports a finding of actual malice is a question of law. Harte-Hanks Communications, Inc. v. Connaughton (1989),491 U.S. 657, 685, 109 S.Ct. 2678.
 {¶ 12} In St. Amant, the United States Supreme Court discussed the evidence that is required to support a conclusion that a defamation defendant has acted with reckless disregard of the truth or falsity of his or her publication. The court held that "[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." Id., at 731. Thus, evidence of the defendant's subjective state of mind is required in order to satisfy the actual malice standard. Id., at 733. However, the ability of defendants to subvert the standard with self-serving testimony is limited. The defendant cannot automatically insure a favorable verdict by testifying that he published with a belief that the statements were true. Id., at 732. The finder of fact must determine whether the publication was indeed made in good faith. Id. A defendant lacks good faith to make a statement shown to be false where there is either no basis in fact for the statement or no information upon which the defendant could have justifiably relied in making the statement. Id., at 732. Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call. Id. While the proper standard requires a clear and convincing showing, it can be satisfied by circumstantial evidence of the defendant's state of mind. Citizens to Save Northland v. OhioElections Comm. (Dec. 27, 2001), Franklin App. No. 01AP-115.
 {¶ 13} As this court indicated in Serv. Emp. Internatl. Union Dist.1199 v. Ohio Elections Comm., 158 Ohio App.3d 769, 2004-Ohio-5662, at ¶ 24, where a statement is supported by some basis in fact, courts have found insufficient evidence of actual malice even if the statement is ultimately found to be untrue. Id., citing St. Amant, at 733 (finding actual malice lacking where the defendant published a source's false statements about a public officer but the defendant had no personal knowledge that the statements were false, had verified other aspects of the source's information, and had affidavits from other sources substantiating the statements); Flannery v. Ohio Elections Comm.,156 Ohio App.3d 134, 2004-Ohio-582 (finding no malice where ultimately incorrect statements were published but the defendant had a factual foundation and an arguably rational basis for making the statements);Mosley v. Evans (1993), 90 Ohio App.3d 633, 638 (finding no malice where some factual foundation existed for statements). Likewise, the United States Supreme Court in Bose Corp. v. Consumers Union of United States,Inc. (1984), 466 U.S. 485, 104 S.Ct. 1949, found clear and convincing evidence of actual malice lacking where the author's statement was one of a number of possible rational interpretations of an event that bristled with ambiguities. Id., at 512, citing Time, Inc. v. Pape
(1971), 401 U.S. 279, 290, 91 S.Ct. 633.
 {¶ 14} Here, in finding appellant had failed to demonstrate Critchet made her statements with actual malice, the trial court found that the conflicts and discrepancies between Critchet's testimony and other witnesses who testified at appellant's trial for assault and aggravated menacing did not establish with convincing clarity that Critchet concocted the allegations, as suggested by appellant. Appellant's theory as to why he has "clear[ed] the bar for proving actual malice" is straightforward: Appellant denies having doused Critchet with the liquid, and he says Critchet is lying. Appellant calls the trial court's conclusion that Critchet might not have known that her statements were false or made with reckless disregard "patently absurd."
 {¶ 15} After a review of the testimony and evidence presented to the trial court, we find appellant has failed to demonstrate that Critchet's statements were made with actual malice. Gregory Haggit, an investigator for the city of Columbus Fire Department, testified at the criminal trial that Critchet told him that she was splashed with the liquid while appellant told him he did not splash her. By the time Haggit saw Critchet, there was no visible staining or odor from the liquid on her body. Besides appellant's word and Critchet's word, there was no other evidence to determine what had happened. Haggit stated that he viewed videotapes from two local news stations, but the video was taken after Critchet had allegedly been doused, so he did not pursue an attempted aggravated arson charge against appellant. He further stated that there was no discussion between him and Critchet for him to take her clothing and analyze it for the presence of a flammable fluid. Haggit stated when Critchet first spoke to him, she told him that appellant threw gasoline on her and told her that she was going to burn in hell. Later, when she wrote her written statement, Critchet stated that appellant "flipped" gasoline on her and said "[y]ou're all going to burn in hell[.]" Haggit stated he did not interview any other witnesses or officers to determine what had happened.
 {¶ 16} James Evans, a paramedic and firefighter for the city of Columbus, testified at the criminal trial that Critchet told him that she had been splashed with gasoline, and they placed her in the ambulance. He washed her legs with a cleansing pad. There were no physical signs of irritation or redness. He smelled nothing on Critchet that smelled like a flammable liquid.
 {¶ 17} Critchet testified at the criminal trial that, for the past seven years, she had been employed in loss prevention and security for several employers and had volunteered for security at the Pride Parade, being the director of security for the past two years. In 2001, she assigned herself the task of standing near appellant. At some point during the parade, appellant and other protestors started coming onto the street, and she told them to step back onto the sidewalk, which they would not do. Critchet saw a red gas can and told one of the volunteers to find the police. She then saw appellant with the flag. She also saw appellant's acquaintance, Tom Meyer, and appellant handling the gas can, and appellant had matches. As the two were handling the can and flag, appellant made eye contact with Critchet and stated that they were going to burn in hell. Critchet testified that, as appellant poured the liquid from the can onto the flag, he "flipped" the liquid at her, and it hit her legs, hand, and face. She stated it was clearly directed at her, and she was standing three to four feet from appellant at the time. She was scared, worried, and shocked. The liquid made her cough and her nose, eyes, and legs burn. She also had a bad taste in her mouth. Critchet stated she had red welts on her legs, and her lips were cracking from the fluid. She stated on her headset radio that she had been doused, and a couple minutes after appellant lit the flag, she was finally able to tell a police officer that she had been doused. No fire personnel ever asked her for her clothing, but she offered them to the fire investigator, who declined. She never told Haggit that appellant intended to set her on fire.
 {¶ 18} After reviewing the testimony, as well as the other evidence cited by appellant, we fail to find any question of law as to whether Critchet's statement was made with actual malice. The record is lacking in any evidence that Critchet's statement was made with knowledge that it was false or that she entertained serious doubts as to the truth of her statements. The testimony from Critchet, Haggit, and Evans can only be read to support that Critchet believed appellant splashed her with the liquid. Evans stated Critchet told him that she had been splashed with gasoline. Haggit testified that Critchet wrote in a written statement that appellant "flipped" gasoline on her and stated, "[y]ou're all going to burn in hell[.]" Critchet testified that, as appellant poured the liquid from the can onto the flag, he flipped the liquid at her, and it hit her legs, hand, and face. Thus, despite appellant's denials to the contrary, the only evidence in the record before this court is that Critchet believed appellant had doused her.
 {¶ 19} Appellant's refutations, even if construed in appellant's favor, would be sufficient only to demonstrate that Critchet was wrong about her statements, and appellant has presented the court with nothing compelling to demonstrate Critchet's state of mind. Although proving another's state of mind in a defamation case may be accomplished via circumstantial evidence, Citizens to Save Northland, supra, we find appellant has failed to offer any such circumstantial evidence sufficiently persuasive to show Critchet knew her claims were false or that she entertained serious doubts about the truthfulness of her claims. Appellant's sole accusation that Critchet is lying because her personal beliefs conflict with his is insufficient to demonstrate clearly and convincingly that Critchet acted with reckless disregard, as a matter of law. Actual malice cannot be inferred from evidence of personal spite or ill will. Scott v. News-Herald (1986),25 Ohio St.3d 243. For these reasons, we find that the trial court did not err when it granted summary judgment to Critchet. Appellant's first assignment of error is overruled.
 {¶ 20} Appellant argues in his second assignment of error that the trial court erred in granting summary judgment to Redfield. Although appellant does not specify Redfield's defamatory statement, we presume appellant contends that Redfield acted with actual malice when he issued a press release on behalf of Stonewall and when he made statements to a reporter for an article in a periodical. In the press release, Redfield stated, in pertinent part:
 The only incident th[at] marred the event was a demonstration by an individual that burned his own rainbow flag at Broad and High Street. This is the same individual who was arrested in 1999 for tearing down the Rainbow Flag that flew at the Statehouse and burning it, and whose appeal of his conviction was denied this past week. His mean-spirited actions resulted] in Pride's Security team leader getting gasoline poured on her. When asked by Columbus Police not to burn the flag, he did not comply. The police moved in to arrest him and someone, harming the security team leader, two other security team members, and few others in the crowd, released pepper spray. The police and fire department, and the Pride security team leader have filed charges. Stonewall Columbus encourages the media and those attending not to focus on this one incident.
 "We believe this person wants the attention. By focusing on his actions people are giving him what he wants. Standing there with his expressions of hate, derogatory stereotypes, and untruth is not enough any more. He has to violate the law to get attention. We hope you don't give it to him[,]" stated Joe Stefanko, Pride Committee co-chair.
 "His actions are illegal, putting many people at risk. Our security person was trying to keep the parade moving, the marchers away, and ultimately protect him and everyone. The result is that instead of appreciating the efforts to keep everyone safe by the Columbus Police and our volunteer Pride security team so he can utilize his first amendment rights, he harms her. We hope that City officials will prosecute this event to the fullest exten[t] of the law[,]" stated Redfield.
In the article, Redfield was quoted as stating:
 "Part of our concerns are, his behavior is getting more and more violent every year, * * * but he doesn't get violent until the camera crews turn their attention on him. What is it going to take every year to get media attention on him?"
 {¶ 21} Appellant claims that there exists circumstantial evidence to demonstrate Redfield made the above statements with respect to the alleged gasoline dousing with reckless disregard. The circumstantial evidence he lists in his memorandum contra appellees' motion for summary judgment filed with the trial court is as follows: (1) the spectacular nature of the alleged act; (2) no one else from the crowded public scene could corroborate Critchet's allegation; and (3) appellant denied the accusation. Appellant further claims that the fact that Redfield testified he saw Critchet moments after the alleged dousing and stated he saw red irritation on her legs, which was contrary to Evans' observations, undermines his credibility.
 {¶ 22} The trial court discussed the above circumstantial evidence and found it insufficient to demonstrate actual malice. We concur with the trial court's analysis. With regard to the "spectacular nature" of the allegation, appellant admits that a flammable liquid from a can was poured onto the flag, that a crowd had gathered around him, that he often shouts that people are going to burn in hell for their actions, and that the crowd was hostile. Given that these circumstances were not incompatible with the claims made by Critchet, it is difficult to term her allegations as "spectacular." Redfield was told directly by Critchet that she had been splashed by the liquid, and he claimed to have seen red marks on her legs, which, along with the above surrounding circumstances, would have supported a belief by Redfield that Critchet's allegations were true. See, e.g., St. Amant, at 732 (the events the speaker viewed demonstrated the speaker acted in good faith, as there was some basis in fact for the statement, and there was information upon which the speaker could have justifiably relied in making the statement). Based on the facts known to Redfield, his statements made in the press release and in the periodical were among a number of rational interpretations of the event described by Critchet, which bristled with ambiguities. See Bose Corp., at 512. Further, even if Redfield was not being truthful that he personally witnessed a red irritation on Critchet's legs, as appellant claims, such does not speak to whether Redfield believed Critchet was actually sprayed by appellant. As Redfield was not present, he relied on Critchet's version of the facts, which, given the congruent surrounding circumstances, he could have reasonably believed true and which would not have seemed "spectacular."
 {¶ 23} With regard to the claim that Redfield should have been aware of the falsity of Critchet's statement because no other members of the crowd could corroborate her allegation, there is no evidence that Redfield ever personally attempted to find any witnesses in the crowd or that he knew that there were no corroborating witnesses. Importantly, Redfield was under no duty to find witnesses. A failure to investigate the truth or falsity of a publication, even when a reasonably prudent person would have done so, may raise an issue of negligence, but it does not demonstrate actual malice unless the plaintiff first establishes that the defendant had a high degree of awareness of probable falsity, had serious doubts as to the truth of the statements, or purposefully avoided the truth. Harte-Hanks Comm., at 688; St. Amant, at 731, 733. Here, there was no evidence that Redfield had a high degree of awareness of probable falsity, had serious doubts as to the truth of the statements, or purposefully avoided the truth. The circumstances surrounding the scene were chaotic, appellant admits he is confrontational and boisterous, and it is undisputed that appellant used a flammable liquid to light his flag on fire. Thus, Redfield could have reasonably believed and repeated Critchet's allegation without questioning members of the public or media.
 {¶ 24} Further, although appellant points out that one cannot assert one was merely repeating the libelous statement of another to escape a defamation claim and that, in Ohio, one who repeats a libelous statement is liable for the republication of such, Sawyer v. Devore (Nov. 3, 1994), Cuyahoga App. No. 65306, as we have found Critchet did not act with reckless disregard in making her statement, the notion discussed inSawyer is not applicable to this case. We also note that this is not a situation in which Redfield's claims of a good-faith basis were based upon a story fabricated by Redfield, were the product of Redfield's imagination, were based wholly on an unverified, anonymous tip, or were so inherently improbable that only a reckless man would have put them in circulation. See St. Amant, supra, at 732. Critchet told him that she had been doused by appellant, and appellant points to no convincing reason why Redfield could not have relied upon her statement to him. Thus, we find this argument is unpersuasive.
 {¶ 25} With regard to appellant's denial of Critchet's accusations, we find such denial was insufficient to form a basis in Redfield's mind that Redfield's statements were false or that he should have entertained serious doubts about his statements. Initially, there is no evidence that Redfield was aware of appellant's denials. Further, even if he had known that appellant had denied the crime, because appellant was the accused, Redfield could have reasonably expected a denial and distrusted appellant's refutation. Given the common circumstance that those accused of crimes often deny culpability, we cannot find that appellant's denial, here, should have made Redfield harbor "serious doubts" about the truthfulness of his statements. Thus, this argument is without merit. For the foregoing reasons, we find appellant has failed to offer any evidence to show that Redfield knew his statements were false, had a high degree of awareness of the probable falsity of his statements, or entertained any doubt as to the truth of his publication. Therefore, Redfield was entitled to judgment as a matter of law. Appellant's second assignment of error is overruled.
 {¶ 26} Appellant argues in his third assignment of error that the trial court erred in granting summary judgment to Stonewall. Appellant claims that, because Redfield, as the executive director of Stonewall, and Critchet, as a security volunteer directed by Stonewall, were liable for defamation, Stonewall is liable under the principles of respondeat superior. Under the doctrine of respondeat superior, a corporation may be held vicariously liable for its employees' acts. Clark v. SouthviewHosp. Family Health Ctr. (1994), 68 Ohio St.3d 435, 438. However, as we have found that summary judgment was properly granted to Redfield and Critchet on appellant's defamation claims, Stonewall can have no liability under this doctrine. Therefore, appellant's third assignment of error is overruled.
 {¶ 27} Accordingly, appellant's three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
KLATT and FRENCH, JJ., concur.