[Cite as *McClure v. Ohio Dept. of Rehab. & Corr.*, 2020-Ohio-1035.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT


Joel V. McClure,                           :

      Plaintiff-Appellant,              :

v.                                          :              No. 19AP-535
                                                    (Ct. of Cl. No. 2018-00683JD)
Ohio Department of Rehabilitation           :
and Correction                                          (REGULAR CALENDAR)
                                            :
      Defendant-Appellee.
                                            :

                                            :

_____

D E C I S I O N

Rendered on March 19, 2020

_____


**On brief:** *Joel V. McClure*, pro se.

**On brief:** *Dave Yost*, Attorney General, and *Timothy M. Miller*, for appellee.

_____

APPEAL from the Court of Claims of Ohio

SADLER, P.J.

{¶ 1} Plaintiff-appellant, Joel V. McClure, appeals from a judgment of the Court of Claims of Ohio in favor of defendant-appellee, Ohio Department of Rehabilitation and Correction ("DRC"). For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Appellant is an inmate in the custody and control of DRC at the London Correctional Institution ("LCI"). In 2017, appellant was a volunteer in the LCI dog handling program. Sergeant Brian Preston, who is employed by DRC as a corrections officer at LCI, has been involved in the dog handling program for the past eight years. According to Preston, in January 2017, he received complaints from other inmates in the dog handling

program regarding the manner in which appellant trained his dog. After Preston watched a videotape of appellant interacting with his dog, he formed the belief that appellant "had a poor attitude when it came to caring for his dog and receiving instruction on how to care for his dog." (Preston Aff. at ¶ 5, attached to appellee's May 1, 2019 Mot. For Summ. Jgmt.) Preston believed appellant "did not appear to be interested in interacting with his dog." (Preston Aff. at ¶ 5.)

{¶ 3} Preston told Karen Mason, who was responsible for overseeing the inmate dog handling program at LCI, that appellant should be removed from the program. According to Preston, "[o]n or about January 24, 2017," Mason removed appellant from the dog handling program. (Preston Aff. at ¶ 7.) Preston completed an Inmate Evaluation Report to document the reason appellant was being removed from the program. According to Preston, the written evaluation was "not shared with other inmates." (Preston Aff. at ¶ 7.)

{¶ 4} On April 19, 2018, appellant filed a complaint in the Court of Claims alleging Preston defamed him by making false statements to DRC staff and inmates disparaging appellant's reputation in the prison and his skill as a dog handler. DRC moved the Court of Claims for summary judgment arguing that appellant's failure to plead and offer proof of special damages required a judgment in appellee's favor, as a mater of law. In the alternative, DRC argued that qualified privilege shielded DRC from liability to appellant for the alleged defamatory communications.

{¶ 5} In his complaint, appellant alleged Preston's false statements to DRC staff and inmates damaged his "reputation as a model prisoner." (Compl. at ¶ 8.)

## II. ASSIGNMENTS OF ERROR

{¶ 6} Appellant assigns the following as trial court error:

> [1.] THE COURT OF CLAIMS OF OHIO ERRED WHEN IT GRANTED THE SUMMARY JUDGMENT TO THE DRC WHEN THERE WAS GENUINE ISSUE OF METERIAL FACT AT ISSUE.

> [2.] THE TRIAL COURT SHOULD NOT HAVE GRANTED SUMMARY JUDGMENT WHEN THERE IS A QUESTION OF A WITNESS' CREDIBILITY IS AN ISSUE.

(Sic passim)

### III.  STANDARD OF REVIEW

{¶ 7}   Appellate review of summary judgment is de novo.  *Gabriel v. Ohio State Univ. Med. Ctr.*, 10th Dist. No. 14AP-870, 2015-Ohio-2661, ¶ 12, citing *Byrd v. Arbors E. Subacute & Rehab. Ctr.*, 10th Dist. No. 14AP-232, 2014-Ohio-3935, ¶ 5.  Pursuant to Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Accordingly, summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party.  *Phillips v. Wilkinson*, 10th Dist. No. 17AP-231, 2017-Ohio-8505, ¶ 11, citing *Byrd* at ¶ 6, citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978).

{¶ 8}   " '[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim.' "  *Byrd* at ¶ 7, quoting *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996).  "Once the moving party meets its initial burden, the nonmovant must set forth specific facts demonstrating a genuine issue for trial."  *Phillips* at ¶ 12, citing *Byrd* at ¶ 7, citing *Dresher* at 293.

### IV.  LEGAL ANALYSIS

{¶ 9}   In each of appellant's assignments of error, appellant argues the Court of Claims erred when it granted summary judgment in appellee's favor.  Because our review of the judgment is de novo, we will consider appellant's assignments of error jointly.

{¶ 10}   "[D]efamation occurs when a publication contains a false statement 'made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession.' "  *Jackson v. Columbus*, 117 Ohio St.3d 328, 2008-Ohio-1041, ¶ 9, quoting *A & B-Abell Elevator Co., Inc. v. Columbus/Cent. Ohio*

*Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 7 (1995). "Defamation includes both libel and slander; libel refers to written or printed defamatory words, while slander refers to spoken defamatory words." *Gilson v. Am. Inst. of Alternative Medicine*, 10th Dist. No. 15AP-548, 2016-Ohio-1324, ¶ 37, citing *Woods v. Capital Univ.*, 10th Dist. No. 09AP-166, 2009-Ohio-5672, ¶ 27. "The elements of defamation, whether slander or libel, are: (1) the defendant made a false and defamatory statement concerning another, (2) the false statement was published, (3) the plaintiff was injured, and (4) the defendant acted with the required degree of fault." *Gilson* at ¶ 37, citing *Spingola v. Stonewall Columbus, Inc.*, 10th Dist. No. 06AP-403, 2007-Ohio-381, ¶ 8.

{¶ 11} "Actionable defamation falls into one of two categories: defamation per se or defamation per quod." *Gilson* at ¶ 38, citing *Woods* at ¶ 28. "Defamation per se occurs when a statement, on its face, is defamatory." *Gilson* at ¶ 38, citing *Woods* at ¶ 29. Under Ohio common law, in order to be actionable per se, the alleged defamatory statement must fit within one of four classes: (1) the words import a charge of an indictable offense involving moral turpitude or infamous punishment; (2) the words impute some offensive or contagious disease calculated to deprive a person of society; (3) the words tend to injure a person in his trade or occupation; and (4) in cases of libel only, the words tend to subject a person to public hatred, ridicule, or contempt. Whether an unambiguous statement constitutes defamation per se is a question of law. *Gilson* at ¶ 37, citing *Spingola* at ¶ 8. *See also Peters v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 14AP-1048, 2015-Ohio-2668, ¶ 1.

{¶ 12} If a statement is defamatory per se, a plaintiff " 'may maintain an action for [defamation] and recover damages, without pleading or proving special damages.' " *Woods* at ¶ 30, quoting *Becker v. Toulmin*, 165 Ohio St. 549, 553 (1956). However, when defamation is per se, "[p]roof of the defamation itself establishe[s] the existence of some damages." *Gosden v. Louis*, 116 Ohio App.3d 195, 208 (9th Dist.1996). Where a statement is defamatory per quod, a plaintiff must plead and prove special damages. *Woods* at ¶ 30, citing *Becker* at 557. *See also* Civ.R. 9. " 'Special damages are those direct financial losses resulting from the plaintiff's impaired reputation.' " *Peters* at ¶ 7, quoting *Hampton v. Dispatch Printing Co.*, 10th Dist. No. 87AP-1084 (Sept. 13, 1988).

{¶ 13} "To survive a motion for summary judgment in a defamation action, the plaintiff must make a sufficient showing of the existence of every element essential to his or her case." *Cummerlander v. Patriot Preparatory Academy Inc.*, 86 F.Supp.3d 808, 829 (S.D.Ohio 2015), citing *Daubenmire v. Sommers*, 156 Ohio App.3d 322, 2004-Ohio-914, ¶ 79 (12th Dist.).

### A. Slander Claim

{¶ 14} As noted above, slander refers to spoken defamatory communications. *Gilson* at ¶ 37; *Woods* at ¶ 27. In opposition to appellee's motion for summary judgment, appellant submitted his own affidavit and the affidavit of a fellow inmate. In his affidavit, appellant averred, in relevant part, as follows:

> 2. I was in the dog program at [LCI] n since September 1, 2015 until January 24, 2017.
>
> * * *
>
> 5. Between January 14, 2017 and January 24, 2017 at one of Inmate Douglas Tobias' made up classes. I got into a disagreement with Inmate Tobias on training techniques in front of all of the dog handlers.
>
> * * *
>
> 7. Inmate Tobias went to Sergeant Brian Preston and fabricated a story that I had a "know it all attitude" was a bad dog handler and that I should be immediately removed from the dog program.
>
> 8. Instead of Sergeant Preston throughly investigating the matter. He simply took Inmate Tobias' word for it, removed me from the program and published the untrue statements on an "Inmate Evaluation Report."
>
> 9. Once he removed me from the program, Sergeant Preston went to every staff member who worked my unit and told them that I was not to interact with any of the dogs because I was a bad dog handler and a trouble maker.
>
> 10. When I was out on the recreation yard, or walking within the institution, Sergeant Preston would point me out to the yard officers in the presence of numerous inmates and tell them if they saw me interacting with dogs to write me a conduct report and put me in the hole if they wanted.
>
> 11. Until late March or early April of 2017 they publicly made false statements, ridicule me and humiliated me with malice. If Sergeant Preston, or Unit Manager Sharon Carter saw me

out on the prison yard around numerous inmates. They would call me over to where they were conversing with other staff and say things like, "Inmate McClure, come here." When I would get in front of them they would tell the other staff: "This guy is a pain in the ass, if you see him messing with any of the dogs write his ass up. He was a shitty dog handler and I don't want him messing up any of the staffs dogs who come in."

\* \* \*

13. Sergeant Preston could not have known that Inmate McClure was a bad dog handler because he was never at any of the dog training classes. Inmate Tobias did all if Sergeant Preston's Work for him.

(Sic passim.)  (Appellant's Aff. at 1-3, filed June 24, 2019.)

{¶ 15} Appellant also submitted the affidavit of fellow inmate James Blankenship in opposition to appellee's motion for summary judgment. Blankenship averred, in relevant part, as follows:

2. On numerous occasions before I left the dog program in November 2017. I heard Sergeant Brian Preston talking to other unit staff members openly in front at least ten other inmates at any given time. He would tell the other unit staff members that Inmate Joel McClure was fired because he was a bad dog handler and a trouble maker.

3. Sergeant Preston and Unit Manager Sharon Carter openly said these things in the presence of inmates until I left the dog program in November of 2017.

4. I was in the dog program for well over a year and I never saw Inmate McClure deviate from the proper training techniques taught to him by Inmate Tobias.

5. Inmate McClure was fired because he called Inmate Tobias out on some of his training techniques.

6. Shortly thereafter, Inmate Tobias went to Sergeant Preston and told Sergeant Preston to kick Inmate McClure out of the dog program because Inmate McClure has a "know it all" attitude.

7. Sergeant Preston lied in his affidavit to this Court claiming that he and Karen Mason watched a video of Inmate McClure being a bad dog handler. Karen Mason was out on sick leave months prior and months after Inmate McClure was kicked out of the dog program.

8. Sergeant Preston could not have known that Inmate McClure was a bad dog handler because he was hardly ever at

any of the dog training classes. Inmate Tobias did all if Sergeant Preston's Work for him.

(Sic passim) (Blankenship Aff. at 1-2, filed June 24, 2019.)

{¶ 16} As previously noted, to constitute slander per se, a false oral statement must consist of words which import an indictable criminal offense involving moral turpitude or infamous punishment, impute some loathsome or contagious disease which excludes one from society, or tends to injure one in his trade or occupation. *Gilson*, 2016-Ohio-1324, at ¶ 37, citing *Spingola,* 2007-Ohio-381, at ¶ 8. Where facts demonstrate the slanderous statements meet these criteria, general damages and malice are presumed as a matter of law. *Woods*, 2009-Ohio-5672, at ¶ 30; *Becker*, 165 Ohio St. at 553. Where an oral statement is not defamatory per se, a plaintiff must plead and prove special damages. *Woods* at ¶ 30, citing *Becker* at 557. *See also* Civ.R. 9.

{¶ 17} None of the defamatory oral statements allegedly made by Preston qualify as slander per se. The statements portray appellant as a "troublemaker" and a poor dog handler, with a know-it-all attitude toward dog training and an unwillingness to take guidance from other dog trainers, but they do not import an indictable criminal offense involving moral turpitude or infamous punishment, imputed some loathsome or contagious disease which would exclude appellant from society, or tend to injure appellant in his trade or occupation. Appellant does assert in his merit brief that he participated in the dog handling program in order to "obtain his certification with the United States Department of Labor to be a certified 'Dog Trainer' upon his release." (Appellant's Brief at 1.) However, even if an oral defamatory statement that injures one in a possible future occupation would qualify as slander per se, neither appellant's complaint nor the affidavits he submitted in opposition to summary judgment mention a possible future vocation as a dog trainer. Accordingly, appellant presented nothing to the Court of Claims that would create a genuine issue of fact whether Preston's oral statements constituted slander per se.

{¶ 18} Because the alleged oral defamatory statements do not qualify as slander per se, in order to survive summary judgment, appellant was required to plead and offer proof of special damages. *Woods* at ¶ 30, citing *Becker* at 557. *See also* Civ.R. 9. In his complaint, appellant alleges only that Preston's false statements to DRC staff and inmates damaged his "reputation as a model prisoner." (Compl. at ¶ 8.) There are no facts alleged either in appellant's complaint or in the affidavits submitted by appellant in opposition to the motion

for summary judgment that would permit an inference that appellant suffered financial losses resulting from his impaired reputation as a model inmate and dog handler.  In light of appellant's failure either to plead or submit some proof of special damages, appellant cannot satisfy an essential requirement to his slander claim.  Accordingly, we hold the Court of Claims did not err when it granted appellee's motion for summary judgment as to appellant's slander claim.

### B.  Libel Claim

{¶ 19}  Appellant's libel claim is based exclusively on statements made by Preston in his Inmate Evaluation Report.  The statement reads as follows:

> A review of cameras, in person observation, and evaluation by group inmate advisor, inmate has a attitude of "knowing it all."  As a result shows no willingness to take guidance from others, trains the dogs his way, and in a manner not consistant [sic] with the dog program for the rescue organization, and shows no initiate [sic] with the dogs.[1]

{¶ 20}  "In cases of libel, the question of whether the publication complained of is libelous per se is a question of law for the trial court."  *Whitt Sturtevant, LLP v. NC Plaza LLC*, 10th Dist. No. 14AP-919, 2015-Ohio-3976, ¶ 72.  *See also Webber v. Ohio Dept. of Pub. Safety*, 10th Dist. No. 17AP-323, 2017-Ohio-9199, ¶ 37.  The Court of Claims determined the statements made by Preston in the Inmate Evaluation Report were not defamatory per se.  Whether certain statements alleged to be defamatory are actionable or not is a matter for the court to decide as a matter of law.  *Id.* at ¶ 37, citing *Am. Chem. Soc. v. Leadscope, Inc.*, 133 Ohio St.3d 366, 2012-Ohio-4193, ¶ 78, citing *Yeager v. Local Union 20, Teamsters*, 6 Ohio St.3d 369, 372 (1983).  "In determining whether a statement is defamatory as a matter of law, a court must review the totality of the circumstances, consider the statement within its context rather than in isolation, and determine whether a reasonable person would interpret that statement as defamatory."  *Webber* at ¶ 37, citing *Am. Chem. Soc.* at ¶ 79.

{¶ 21}  Our review of the Inmate Evaluation Report does not reveal any statements about appellant that would subject appellant to public hatred, ridicule, or contempt.  The

---

[1] The Inmate Evaluation Report also contains a rating system asking the evaluator to rate appellant on a scale of one to ten on such attributes as attitude, initiative, quality/quantity, attendance, dependability, safety/housekeeping, and increasing knowledge/skill.  Preston gave appellant a total score of 33 out of 100 possible points.

statements merely portray appellant as an unwilling or disinterested participant in the voluntary prison dog handling program. The report does not accuse appellant of mistreating dogs or directly state appellant is a poor dog handler who was dismissed from the program. At worst, the statements in the Inmate Evaluation Report arguably permit the inference that appellant is a poor dog handler. As such, the statements are defamatory by innuendo only, if at all. *See Sullivan v. Tucci*, 69 Ohio App.3d 20, 22 (10th Dist.1990) (statement in a newspaper article that a local politician "failed to make a promised statement" is libelous per quod because it is can be interpreted that the promised announcement was merely delayed or could not be kept for valid reasons); *Griffis v. Klein*, 2d Dist. No. 22285, 2008-Ohio-2239, ¶ 32-33 (written statement in a newspaper was libelous per se because it directly accused a union employee of involvement in the distribution of pre-market election ballots during the club's election). Because the statements in the Inmate Evaluation Report directly accuse appellant of being nothing more than an unwilling or disinterested participant in the voluntary prison dog handling program, we agree with the Court of Claims that the alleged defamatory statements contained in the Inmate Evaluation Report constitute, at worst, libel per quod.

{¶ 22} Because the alleged defamatory statements in the Inmate Evaluation Report do not constitute libel per se, in order to survive summary judgment, appellant was required to plead and produce evidence of special damages. As previously noted, appellant's complaint reveals no allegation of any monetary loss to appellant arising from the alleged defamatory statements made by Preston in the Inmate Evaluation Report, and there is nothing in appellant's affidavits that would suggest that appellant suffered a financial loss due to the allegedly false statements in the report. In light of appellant's failure either to plead or submit some proof of special damages, appellant cannot satisfy an essential requirement to his libel claim. Accordingly, we hold the Court of Claims did not err when it granted appellee's motion for summary judgment as to appellant's libel claim.[2]

{¶ 23} For the foregoing reasons, appellant's two assignments of error are overruled.

---

[2] Having concluded appellant failed to produce evidence to satisfy a critical element of his defamation claim, and appellee is entitled to judgment as a matter of law, we need not address the Court of Claims' alternative holding regarding qualified privilege.

## V. CONCLUSION

{¶ 24} Having overruled appellant's two assignments of error, we affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

DORRIAN and LUPER SCHUSTER, JJ., concur.

_____