[Cite as *Johnson v. Port Clinton*, 2025-Ohio-3100.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

Kent D. Johnson                                          Court of Appeals No. OT-24-036

    Appellant                                          Trial Court No. 2024 CVH 051

v.

City of Port Clinton, et al.                          **DECISION AND JUDGMENT**

    Appellees                                          Decided:  August 29, 2025

* * * * *

Mark P. Smith and John A. Coppeler, for appellant.

John D. Latchney, for appellees.

* * * * *

**DUHART, J.**

{¶ 1} Appellant Kent D. Johnson appeals the judgment of the Ottawa County Court of Common Pleas, granting the Civ.R. 12(C) motion for judgment on the pleadings filed by appellees the City of Port Clinton ("the City"), Michael Snider, Tracy Colston, and Dina Shenker (collectively "appellees").  For the following reasons, the trial court's judgment is affirmed, in part, and reversed, in part.

**Statement of the Case and Facts**

{¶ 2} Appellant served as the Fire Chief for the City. On January 17, 2024, appellees removed him from his position. Subsequently, appellant filed the present matter on February 6, 2024, and filed an amended complaint on February 29, 2024. The following facts are taken from the allegations in the amended complaint.

{¶ 3} Appellant has been employed by the City as a fire fighter since 1992 and has served as Fire Chief since 2008. During that time, he has never been reprimanded or disciplined.

{¶ 4} On June 6, 2023, Dina Shenker, Law Director for the City, received a phone call from the attorney for Port Clinton EMS employee, Rebecca Huskey, alleging that appellant sexually harassed his client. Shenker and Tina Colston, Director of Safety and Service for the City, placed appellant on administrative leave that day, informing him that he was prohibited from being at the Port Clinton Fire Station and from having any contact with Huskey. They also informed him that the City was referring the matter to Clemans Nelson Associates ("Clemans") for an investigation.

{¶ 5} Separately, on June 9, 2023, Huskey filed a complaint for a civil protection order ("CPO") against appellant. The trial court initially granted an ex parte CPO. Following a hearing on July 25, 2023, however, the trial court found that Huskey failed to prove her allegations against appellant by a preponderance of the evidence and therefore denied Huskey's request for a CPO and dismissed the ex parte CPO.

{¶ 6} Thereafter, on July 31, 2023, Johnson submitted a written request to return to his position as Fire Chief. Shenker responded in writing that Clemans had not

2.

completed its administrative investigation, and the Ohio Bureau of Criminal Investigations ("BCI") had not completed its criminal investigation, and the City could not make a decision until both investigations were finished.

{¶ 7} Clemans submitted its report on December 15, 2023. That same day, Colston and the mayor of the city, Michael Snider, served appellant with a "Notice of Predisciplinary Conference" to be held on December 21, 2023, regarding three charges. Two of the charges pertained to payroll matters concerning Huskey. The third referenced Huskey's sexual harassment claim. Each of the charges was listed as "Group III Offenses" and warned that a violation would be subject to "discipline for cause up to and including termination of employment." The hearing was rescheduled to January 9, 2024, upon appellant's request.

{¶ 8} Prior to the hearing, appellant's attorneys met with Shenker, Colston, and Snider on January 4, 2024. At that meeting, Shenker, Colston, and Snider stated that the City's intention was to terminate appellant's employment. Appellant's attorneys objected, arguing that the law was not being followed pertaining to removal of fire chiefs by municipalities. They further informed the trio that under these circumstances, appellant would be forced to file a lawsuit due to the lack of due process resulting from the non-compliance with the law and civil service requirements. In addition, they advised that appellant would also file a claim for infliction of emotional distress. Shenker, Colston, and Snider responded that they intended to go forward with the predisciplinary conference and the termination of appellant's employment. The three

3.

stated that the planned termination would cause significant financial losses to appellant, which he could avoid if he were to resign or retire.

{¶ 9} The predisciplinary conference occurred as scheduled on January 9, 2024. Colston served as the hearing officer. According to the City's Policy and Procedure Manual, if a hearing officer is someone "other than the appointing authority," which in this case is the mayor, the hearing officer shall objectively hear the case and prepare a written report with findings of fact which shall be provided to the employee and appointing authority within 5 working days following its preparation. Colston failed to prepare a written report with findings of fact and failed to provide it to appellant in a timely manner.

{¶ 10} Based upon these facts, appellant asserted six causes of action: (1) Violation of Civil Service Statutes; (2) Infliction of Emotional Distress; (3) Defamation; (4) Violation of Rights under the Ohio Constitution; (5) Wrongful Termination; and (6) Retaliation.

{¶ 11} In his first claim for violation of the civil service statutes, appellant asserted that under R.C. 124.40(A), Snider has the exclusive authority to suspend him as fire chief. In addition, he alleged that, contrary to the requirements of R.C. 124.34(C), appellees did not provide him with a copy of the order of suspension, nor did they file the order with the Port Clinton Civil Service Commission. He further alleged that Shenker's threat that he would suffer significant financial losses if he was terminated, but not if he resigned or retired, violated R.C. 124.61. Appellant sought a declaration from the trial court that Snider and Shenker "have refused and neglected to comply with the Ohio

4.

Revised Code civil service statutes."  He also requested that the trial court refer them to either the Ohio Attorney General or the Ottawa County Prosecuting Attorney for their removal from office.

{¶ 12} In his second claim for infliction of emotional distress, appellant asserted that appellees' "intentional and reckless" conduct caused him emotional distress and was "extreme and outrageous" particularly in light of his "spotless prior disciplinary record." Specifically, he listed appellees' conduct in

> (a) suspending [him] on June 6, 2023 based only upon a phone call to Defendant Shenker, (b) then terminating [his] employment allegedly based upon [his] submission of payroll requests for Rebecca Huskey in accordance with procedures which have been in place in the City of Port Clinton for decades whereby employees enter their daily hours to the Fire Chief who then submits them to Defendant Colston and a representative of the City Auditor who review and approve all payroll requests, and based upon allegations of sexual harassment which had been tried before an assigned visiting judge who listened to all testimony presented during a full day's trial and who concluded that Huskey failed to meet her burden of proof by the required preponderance of evidence, (c) failing to comply with requirements of the Ohio Revised Code as set forth above, (d) threatening [him] with financial losses if he chose not to resign or retire, (e) sending two police officers with their two cruisers to his home to serve him with the January 9, 2024, predisciplinary conference notice, (f) failing to provide written notice of his June 6, 2023, suspension as required by R.C. 124.34(C) and of the results of the predisciplinary conference, and (g) on information and belief, requesting a criminal investigation of [him] on charges of theft in office because of his receipt of bonus payments he received which were authorized by Defendant Colston and others for fire fighters.

{¶ 13} In his third claim for defamation, appellant stated that the report from Clemans found that he was responsible for ensuring that fire department employees' time sheets were accurate, and that there were times when Huskey was overpaid or underpaid. The report concluded that, "[d]espite [appellant's] assertion that he did not intentionally

5.

overpay or underpay Ms. Huskey, an inference can be drawn that this was intentional when combining the overpayment and underpayments with the inappropriate text messages sent by [appellant] to Ms. Huskey." Appellant alleged that the assertion that he "intentionally" overpaid Huskey is false and defamatory, and subjects him to damage to his reputation, public contempt, ridicule, shame, and disgrace. He further alleged that the City's statements to news media outlets, other City employees, and fire department members that he was removed as Fire Chief for financial misconduct and sexual harassment were made intentionally, recklessly, with actual knowledge of their falsity, and with actual malice when appellees were fully aware that Huskey's sexual harassment claims "had been duly tried . . . and rejected."

{¶ 14} Appellant's fourth and fifth claims are related to his first. In his fourth claim, he contends that he has a protected property interest in his continued employment, and appellees' conduct deprived him of that right without due process as guaranteed by the Ohio Constitution. In his fifth claim, he alleges that he was wrongfully terminated, and that his termination was without factual or legal basis and was in violation of the Ohio Revised Code and civil service requirements.

{¶ 15} Finally, in his sixth claim, appellant alleged that Shenker requested that BCI investigate him for six instances of theft in office, which purportedly relates to his receipt of an annual training stipend authorized for fire fighters who attend a certain percentage of weekly training sessions during the year. Appellant alleged that he had been told by City employees that he was eligible for the stipend, and that his request had been approved by Colston and the City Auditor before payment was made. He asserted

6.

that the referral of theft in office charges was done maliciously, intentionally, willfully, and wrongly in retaliation against him for asserting his rights in relation to his continued employment as fire chief.

{¶ 16} Appellees moved for judgment on the pleadings pursuant to Civ.R. 12(C). Appellant opposed the motion, and appellees filed a reply. The trial court held a hearing on the motion on July 3, 2024. Following the hearing, the trial court entered its judgment on July 16, 2024, granting appellees' motion and dismissing the complaint with prejudice.

{¶ 17} In its judgment, the trial court addressed each of appellant's six claims. First, the trial court found that there is no common law claim for violation of civil service statutes as R.C. 124.34 allows aggrieved employees to file an appeal with the State Personnel Board of Review. Second, it found that appellant's allegations did not meet, as a matter of law, the requisite level of "outrageous" conduct to sustain an intentional infliction of emotional damages claim. Third, it concluded that appellant did not sufficiently allege that the individual defendants published defamatory information, or that appellees acted with actual malice when they informed others of the official actions that they were undertaking. Fourth, the trial court held that there is no private right of action to bring a claim for violation of rights under the Ohio Constitution. Fifth, as to appellant's wrongful termination claim, the trial court found that appellant's employment is governed by statute, and even if he could plead a claim of wrongful termination in violation of public policy, appellant did not allege any violation of public policy nor is a

7.

public policy at jeopardy because statutory remedies exist. Finally, the trial court held that Ohio does not recognize a common law claim for retaliation.

## Assignments of Error

{¶ 18} Appellant has timely appealed the trial court's July 16, 2024 judgment, asserting four assignments of error for our review:

> 1. The Trial Court erred in granting the motion of Defendants-Appellees for judgment on the pleadings on Appellant's claim for defamation.

> 2. The Trial Court erred in granting the motion of Defendants-Appellees for judgment on the pleadings on Appellant's claim for infliction of emotional distress.

> 3. The Trial Court erred in granting the motion of Defendants-Appellees for judgment on the pleadings on Appellant's claim for retaliation, which should be recognized as an extension of permitted causes of action such as is allowed under R.C. Chap. 4112.

> 4. The Trial Court improperly dismissed Appellant's claim for relief asking for a declaratory judgment that his rights to his position as Fire Chief were improperly denied by the City's failure to follow its Policy and Procedure Manual.

## Standard of Review

{¶ 19} We review the trial court's Civ.R. 12(C) judgment on the pleadings de novo. *Wilhelms v. ProMedica Health System, Inc.*, 2023-Ohio-143, ¶ 12 (6th Dist.), citing *Roddy v. Williamson*, 2016-Ohio-8437, ¶ 6 (10th Dist.).

{¶ 20} Under Civ.R. 12(C), "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." "A motion for judgment on the pleadings presents only questions of law and *may only be granted when no material issues of fact exist* and the moving party is entitled to judgment as a

8.

matter of law." (Emphasis sic.) *Wilhelms* at ¶ 12, quoting *Roddy* at ¶ 6, quoting *Mousa v. Mt. Carmel Health Sys., Inc.*, 2013-Ohio-2661, ¶ 10 (10th Dist.). "[A] court is permitted to consider both the complaint and the answer as well as any material incorporated by reference or attached as exhibits to those pleadings." *Walker v. City of Toledo*, 2017-Ohio-416, ¶ 19 (6th Dist.). "In construing a motion for judgment on the pleadings under Civ.R. 12(C), the pleadings and any reasonable inferences to be drawn therefrom are to be liberally construed in favor of the non-moving party." *Wilhelms* at ¶ 12, quoting *Roddy* at ¶ 6.

{¶ 21} Furthermore, "Ohio is a notice-pleading state." *Medical Mutual of Ohio v. FrontPath Health Coalition*, 2023-Ohio-243, ¶ 11 (6th Dist.), quoting *Maternal Grandmother v. Hamilton Cty. Dept. of Job and Family Servs.*, 2021-Ohio-4096, ¶ 10. "This means that outside of a few specific circumstances . . . a party will not be expected to plead a claim with particularity. Rather, a 'short and plain statement of the claim' will typically do." *Id.*, quoting *Maternal Grandmother* at ¶ 10, quoting Civ.R. 8(A). "The purpose of notice pleading is clear: to simplify the proceedings to a short and plain statement of the claim and to simplify statements of the relief demanded . . . to the end that the adverse party will receive fair notice of the claim and an opportunity to prepare his response thereto. (Internal quotations omitted.)" *Id.*, quoting *Wells Fargo Bank, N.A. v. Horn*, 2015-Ohio-1484, ¶ 13.

**Defamation**

{¶ 22} In his first assignment of error, appellant argues that the trial court erred when it dismissed his defamation claim.

9.

**{¶ 23}** "Defamation, which includes both libel and slander, is a false publication causing injury to a person's reputation, exposing the person to public hatred, contempt, ridicule, shame or disgrace, or affecting the person adversely in his or her trade or business." *Feltner v. Village of Whitehouse*, 2018-Ohio-2337, ¶ 16 (6th Dist.); *Rhoads v. Olde Worthington Business Assn.*, 2024-Ohio-2178, ¶ 50 (10th Dist.). "The essential elements of a defamation action are that a false statement was made, that the false statement was defamatory, that the false defamatory statement was published, that plaintiff was injured and that defendant acted with the required degree of fault." *Id.*

**{¶ 24}** "Actionable defamation falls into one of two categories: defamation per se or defamation per quod." *Rhoads* at ¶ 51, quoting *McClure v. Ohio Dept. of Rhab. & Corr.*, 2020-Ohio-1035, ¶ 11 (10th Dist.). Defamation per se includes, inter alia, "words which import an indictable criminal offense involving moral turpitude or infamous punishment." *Hartman v. Kerch*, 2023-Ohio-1972, ¶ 57 (8th Dist.), quoting *Kanjuka v. MetroHealth Med. Ctr.*, 2002-Ohio-6803, ¶ 16 (8th Dist.); *Rhoads* at ¶ 51. "[W]hen defamation is per se, '[p]roof of the defamation itself establishe[s] the existence of some damages.'" *Rhoads* at ¶ 52, quoting *McClure* at ¶ 12.

**{¶ 25}** Here, appellant argues that the complaint alleges that appellees defamed him when it published to news media, other City employees, and members of the fire department the Order of Removal that charged him with intentionally overpaying Huskey. The Order of Removal was attached to the complaint. He contends that intentional overpayment and "intentional misuse of City or other public funds" as alleged

in the Order of Removal are crimes of dishonesty, allegations of which constitute defamation per se.

{¶ 26} Notably, appellees do not contest that the allegations in the Order of Removal would constitute defamation per se if false. Instead, appellees argue that the complaint does not allege that the individual defendants published a statement.

{¶ 27} On this point, the complaint is not entirely clear. It alleges,

> 58. The City's claims for removal of Plaintiff from office as the Fire Chief for financial misconduct and sexual harassment made to news media outlets and other City employees and Fire Department members, when the individual Defendants were fully aware that the sexual harassment claims had been duly tried in the Ottawa County Common Pleas Court and rejected by the Judge sitting by assignment, were made intentionally, recklessly, with actual knowledge of their falsity and with actual malice.

> 59. The actions and conduct of the individual Defendants have directly and proximately caused injury and damage to the Plaintiff, damaged his reputation, exposing him to public contempt, ridicule, shame and disgrace and adversely affecting him in his profession.

The complaint thus intermixes the conduct of appellees; it alleges that the City made claims to news media outlets and other City employees when the individual appellees were aware that the claims were false. Further, it alleges that it is the actions and conduct of the individual appellees—omitting the City—that directly and proximately caused his injury.

{¶ 28} Liberally construing the complaint in appellant's favor, the allegation that the City published the statements when the individual appellees were aware they were false infers that the actions attributed to the City were done so by the individual appellees. Under the notice pleading standard, this is sufficient to allege that appellees,

11.

collectively, were involved in publishing the statement. *See Veller v. K.B.*, 2025-Ohio-687, ¶ 21 (6th Dist.) ("[A] complaint is not fatally defective simply because it does not set forth each element of a cause of action with crystalline specificity." (Internal quotations omitted.)).

{¶ 29} Alternatively, appellees argue that the complaint does not allege that they made a false statement of fact with the required degree of fault. The parties agree that appellant is a public figure, and thus he must prove that appellees acted with actual malice. *Scott v. News-Herald*, 25 Ohio St.3d 243, 248 (1986). "Actual malice" means that the statement was published "with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.*, quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-280 (1964). In this case, contrary to appellees' argument, paragraph 58 of the complaint directly alleges that the claims were made "intentionally, recklessly, with actual knowledge of their falsity and with actual malice."

{¶ 30} Finally, appellees argue that the conclusion that the overpayments were "intentional" is a statement of opinion, not fact. Construing the complaint liberally in favor of appellant, however, the Order of Removal states that appellant was found guilty by a preponderance of the evidence of "Intentional misuse of City or other public funds (dishonesty, neglect of duty, failure of good behavior, or malfeasance)" in that he "intentionally overpaid Rebekah Huskey from December 2022 through May 26, 2023." Thus, the intentional overpayment is the asserted fact used as a justification to remove appellant as the Fire Chief.

12.

{¶ 31} In sum, under the notice pleading standards, the complaint alleges that appellees made a false statement that appellant committed a crime of dishonesty or moral turpitude constituting defamation per se, the statement was published to news media outlets and City employees, and it was made with actual malice. Therefore, we hold that the complaint alleges all the elements for a defamation action, and the trial court erred in granting appellees' motion for judgment on the pleadings.

{¶ 32} Accordingly, appellant's first assignment of error is well-taken.

### Infliction of Emotional Distress

{¶ 33} In his second assignment of error, appellant argues that the trial court erred when it dismissed his intentional infliction of emotional distress claim.[1]

{¶ 34} To recover on a claim for intentional infliction of emotional distress, a plaintiff must demonstrate "(1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress." *Meminger v. Ohio State Univ.*, 2017-Ohio-9290, ¶ 14 (10th Dist.), quoting *Phung v. Waste Mgt., Inc.*, 71 Ohio St.3d 408, 410 (1994). At issue here is whether the complaint alleges conduct that is extreme and outrageous.

{¶ 35} Whether the conduct rises to the level of "extreme and outrageous" is a question of law. *Id.*; *Spitulski v. Bd. of Ed. of the Toledo City School Dist.*, 2018-Ohio-3984, ¶ 61 (6th Dist.). "[I]t is not enough that the defendant has acted with an intent

---

[1] Although not specified in the complaint, appellant recognizes in his brief that his claim was for *intentional*, not negligent, infliction of emotional distress.

13.

which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." *Id.* at ¶ 15, quoting *Mendlovic v. Life Line Screening of Am., Ltd.*, 2007-Ohio-4674, ¶ 47 (8th Dist.). "Rather, '[l]iability is found only where the conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Id.*, quoting *Mendlovic* at ¶ 47; *Yeager v. Local Union 20, Teamsters*, 6 Ohio St.3d 369, 374-375 (1983). "[I]t must be conduct that would lead an average member of the community to exclaim, 'Outrageous!'" *Id.*, quoting *Perkins v. Lavin*, 98 Ohio App.3d 378, 383 (9th Dist. 1994).

{¶ 36} "A trial court may dismiss a claim for intentional infliction of emotional distress, pursuant to Civ.R. 12(B)(6), where the alleged conduct does not, as a matter of law, reach the level of 'extreme and outrageous' conduct." *Morrow v. Reminger & Reminger Co., L.P.A.*, 2009-Ohio-2665, ¶ 48 (10th Dist.), citing *Reamsnyder v. Jaskolski*, 10 Ohio St.3d 150 (1984). The same is true under Civ.R. 12(C) since "[a] trial court reviews a Civ.R. 12(C) motion for judgment on the pleadings using the same standard of review as a Civ.R. 12(B)(6) motion for failure to state a claim upon which relief may be granted." *Walker v. City of Toledo*, 2017-Ohio-416, ¶ 18 (6th Dist.), citing *McMullian v. Borean*, 2006-Ohio-3867, ¶ 7 (6th Dist.).

14.

**{¶ 37}** Appellant argues that appellees' conduct was extreme and outrageous when,

> He was summoned to City Hall where Appellees Shenker and Colston informed him that a call had been made to Shenker from an attorney stating that Appellant had sexually harassed his client, who had never complained of such treatment either to Appellant or anyone else in the City administration; with a spotless 30 year employment history with the City, he was placed on paid administrative leave and instructed to not be at the fire station where he had been the chief since 2008; he had received a favorable decision from the court on a CPO charge leveled against him by that employee without a single fire department employee corroborating the employee's allegations against him; his attorney then wrote the City requesting he be returned to his job; the delayed response of Appellee Shenker said that the City **was required to received** (sic) **reports from both Clemans Nelson and BCII** before it could be determined whether a predisciplinary conference for Appellant would be needed and both reports had not yet been received; after receiving notice of a predisciplinary hearing to be held after the Clemans Nelson report was received on December 15, 2023 which was served upon him with two Port Clinton police cruisers appearing at his home, and his attorneys met with Appellees on January 4 and were told that they intended to terminate his employment with the City which would cause substantial financial losses to Appellant which he could only avoid by resigning or retiring; his attorneys were compelled to file suit against Appellees to force them to comply with Revised Code requirements pertaining to removal of a fire chief; no evidence was presented at the predisciplinary hearing, no report concerning that hearing was written and submitted to him by Appellee Colston in accordance with the City's Policy and Procedures Manual, and the Notice of Removal as Fire Chief was likewise served on him by two uniformed police officers from the City in two cruisers.

(Emphasis sic.) We disagree and find this case is comparable to numerous other situations where courts have examined actions taken in the employment context and held as a matter of law that they did not rise to the level of extreme and outrageous.

**{¶ 38}** In *Branan v. Mac Tools*, 2004-Ohio-5574, ¶ 30 (10th Dist.), the Tenth District held that it was not extreme and outrageous conduct where the plaintiff was fired

15.

and where (1) "he was interrogated for several hours"; (2) "his requests to leave were twice refused"; (3) "the Asset Protection Team members exhibited some degree of physical intimidation, and repeatedly called him a liar and a corporate spy"; (4) he was threatened and told "that he would never get another job in the industry and would be unable to feed his child"; (5) the defendants "went through [plaintiff's] personal belongings in his office and briefcase"; and (6) the defendants "observed [plaintiff's] home and took pictures of the home and vehicles parked in front of the home."

{¶ 39} In *Jones v. Wheelersburg Local School Dist.*, 2013-Ohio-3685, ¶ 49 (4th Dist.), it was not extreme and outrageous conduct where the plaintiff alleged that

> (1) [the defendants] did not act in a professional manner when terminating her; (2) [the defendants'] actions "were designed to embarrass, humiliate and degrade [her] and/or to make [her] a 'scapegoat' for their own misfeasance and/or malfeasance"; (3) [the defendants] "badgered [her] for over four hours"; (4) [the defendants] denied her request for an attorney and "sarcastically" informed her that she "did not need a lawyer if [she] was innocent"; (5) [the defendants] denied [her] request to permit her husband to be present during the four-hour questioning; and (6) [the defendants] falsely accused her of theft.

The Fourth District held that even if the defendants' conduct was "inconsiderate, unkind, unjustified or unprofessional," it "was not so extreme and outrageous as to be utterly intolerable in a civilized society." *Id.* It concluded that "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are not sufficient to establish a claim for intentional infliction of emotional distress. *Id.*

{¶ 40} In *Spitulski*, 2018-Ohio-3984, at ¶ 61-67, this court examined *Brenan*, *Jones*, and several other cases and held that was not extreme and outrageous conduct as a matter of law where the defendants (1) allegedly ignored the plaintiff's due process rights

16.

under the collective bargaining agreement and R.C. 3319.16; (2) attempted to coerce him into signing an unlawful retirement agreement; (3) threatened to convert his paid suspension into an unpaid suspension; (4) and retaliated against him following his filing of an Ohio Civil Rights Commission charge.

{¶ 41} Consistent with these cases, appellees' alleged conduct was not extreme and outrageous where they (1) summoned appellant to City Hall, placed him on paid administrative leave, and prevented him from reporting to the fire station while the matter was investigated; (2) told appellant they had to wait for the results of the independent investigation before reinstating him notwithstanding the trial court's separate conclusion that Huskey was not entitled to a civil protection order; (3) sent two police officers to serve him with notice of a predisciplinary conference that was scheduled after the Clemans Nelson report was received, but without the BCII report yet being completed; (4) told his attorneys that that they intended to terminate his employment with the City which would cause substantial financial losses that he could only avoid by resigning or retiring; (5) did not present evidence at the predisciplinary proceeding; (6) did not produce or submit a written report from the predisciplinary proceeding in accordance with the City's Policy and Procedures Manual; and (7) served him with the Notice of Removal by sending two uniformed police officers in two patrol cruisers. *See also Smith v. Lebanon City Schools*, 1999 WL 1016185 (12th Dist. Nov. 8, 1999); *Shepard v. Griffin Servs., Inc.*, 2002-Ohio-2283, ¶ 80-88 (2d Dist.); *Meminger*, 2017-Ohio-9290, at ¶ 22.

{¶ 42} Therefore, viewing appellees' alleged conduct in the light most favorable to appellant and construing every reasonable inference in his favor, the complaint fails as a

17.

matter of law to allege conduct that is so extreme and outrageous as to be utterly intolerable in a civilized society. Accordingly, the trial court did not err when it granted appellees' Civ.R. 12(C) motion for judgment on the pleadings as to appellant's intentional infliction of emotional distress claim.

{¶ 43} Appellant's second assignment of error is not well-taken.

## Retaliation

{¶ 44} In his third assignment of error, appellant argues that the trial court erred when it found that the common law does not provide for a claim of retaliation. Appellant, however, does not suggest or cite any case law recognizing such a claim. Instead, he argues there is a good faith basis for extending the statutory claim for retaliation under R.C. Chapter 4112 to the circumstances in this case. Specifically, he alleges that a claim for retaliation is appropriate where appellees referred him for criminal investigation into charges of theft in office in response to his filing a lawsuit against them.

{¶ 45} "R.C. Chapter 4112 is comprehensive legislation designed to provide a wide variety of remedies for employment *discrimination* in its various forms." (Emphasis added.) *Helmick v. Cincinnati Word Processing, Inc.*, 45 Ohio St.3d 131, 133 (1989). In particular, R.C. 4112.02(A) provides that it shall be an "unlawful discriminatory practice" "[f]or any employer, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person," to take an adverse employment action against the person. As part of that, R.C. 4112.02(I) provides that it is unlawful "[f]or any person to discriminate in any manner against any other

18.

person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code." Appellant, however, fails to allege or identify any way that he has been discriminated against because of his race, color, religion, sex, military status, national origin, disability, age, or ancestry, and he makes no compelling argument why a remedy for discrimination should be extended to a non-discrimination context.

{¶ 46} In *Foley v. Univ. of Dayton*, 2016-Ohio-7591, ¶ 5, the Ohio Supreme Court was asked to recognize a new claim for "negligent misidentification" for "persons who are negligently improperly identified as being responsible for committing a violation of the law, and who suffer injury as a result of the wrongful identification." In declining to do so, the Ohio Supreme Court identified that public policy "favors the exposure of crime" and "encourages all citizens to report crime and to come forward to aid law-enforcement officers during the investigation of those crimes," and it recognized that a tort of negligent misidentification would have a chilling effect on that policy. *Id.* at ¶ 13. Further, the Ohio Supreme Court reasoned that there were other avenues of redress "for the misuse of civil and criminal actions as a means of causing harm." *Id.* at ¶ 14, quoting *Trussell v. Gen. Motors Corp.*, 53 Ohio St.3d 142, 144 (1990). Specifically, it listed the torts of malicious prosecution, defamation, wrongful or false arrest or imprisonment, and false-light invasion of privacy. *Id.* at ¶ 16.

{¶ 47} Applying the reasoning in Foley, it is clear that a public policy still exists in favor of exposing crime and encouraging citizens to report it, and it would chill that

19.

policy to recognize appellant's expanded view of retaliation. Furthermore, like *Foley* there are other potential avenues of redress available such that expanding the remedy found in R.C. 4112.02(I) to a non-discrimination context is not warranted.

{¶ 48} Accordingly, the trial court did not err when it dismissed appellant's claim for retaliation. His third assignment of error is not well-taken.

**Declaratory Judgment for Violation of Due Process Rights**

{¶ 49} Finally, in his fourth assignment of error, appellant argues that the trial court erred when it dismissed his fourth claim for a declaratory judgment that his due process rights were violated.[2]

{¶ 50} In his fourth claim, appellant alleged that his continued employment as Fire Chief was a protected property interest, and as such he was entitled to due process before his removal. He further alleged that the January 17, 2024 Order of Removal was insufficient to constitute compliance with R.C. 124.34 and 124.40 regarding his suspension on June 6, 2023. Although not expressly detailed in the complaint, R.C. 124.34(C) provides that in the case of the suspension or removal of a fire chief, "the appointing authority shall furnish the chief or member with a copy of the order of suspension, fine, demotion, or removal, which order shall state the reasons for the action." In addition, "[t]he order shall be filed with the municipal or civil service

---

[2] Appellant does not assign any error or present any argument that the trial court erred when it dismissed his related first claim for violation of the civil service statutes or his fifth claim for wrongful termination. Therefore, those claims will not be addressed, and our analysis will be limited solely to his fourth claim.

20.

township civil service commission (sic)." R.C. 124.34(C). R.C. 124.40(A) likewise provides,

> The mayor has the exclusive right to suspend the . . . chief of the fire department for incompetence, gross neglect of duty, gross immorality, habitual drunkenness, failure to obey orders given by the proper authority, or any other reasonable and just cause. If either the chief of police or the chief of the fire department is so suspended, the mayor forthwith shall certify that fact, together with the cause of the suspension, to the municipal civil service commission. Within five days from the date of receipt of the notice, the commission shall proceed to hear the charges and render judgment on them. The judgment may affirm, disaffirm, or modify the judgment of the mayor, and an appeal may be had from the decision of the commission to the court of common pleas as provided in section 124.34 of the Revised Code to determine the sufficiency of the cause of removal.

Appellant also referenced the City's Policy and Procedure Manual, but he did not attach that to the complaint. He nonetheless asserted that it required that if a hearing officer at a predisciplinary conference is someone other than the mayor, that person shall objectively hear the case and prepare a written report with findings of fact which shall be provided to the employee and the mayor within five working days following its preparation.

{¶ 51} Based on this, appellant alleged that appellees' failure to comply with the statutory requirements, as well as appellees' failure to follow the City's own Policy and Procedures Manual, deprived him of his protected property interest without procedural due process. As a remedy, appellant sought a declaratory judgment that "[appellees] have violated Ohio Constitution Article 1, Section 16."[3] He additionally sought compensatory damages in excess of $25,000.

---

[3] Article I, Section 16 of the Ohio Constitution provides, "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay.

21.

{¶ 52} At the outset, we note that appellant makes no mention in his appellate brief of his demand for monetary compensation for violation of his due process rights.[4] Thus, we will focus only on his demand for declaratory judgment.

{¶ 53} Regarding declaratory judgment, we will assume for purposes of this analysis that appellees did not provide appellant due process when they failed to follow the statutory procedures before removing him as Fire Chief. Notably, appellant also contends that he was deprived of due process when appellees failed to follow their own Policy and Procedures Manual and failed to adhere to Shenker's statement that the City required the completion of both the Clemans Nelson and BCI investigations before it could make a decision on reinstating appellant. In support, he cites *Denvir v. Donham*, 2013-Ohio-5837 (11th Dist.), in which the Eleventh District upheld the judgment of the trial court vacating a police officer's suspension because the police chief and village authorities failed to follow the departmental procedural manual. *Denvir*, however, does not support appellant's claim for a violation of due process because in that case the

Suits may be brought against the state, in such courts and in such manner, as may be provided by law."

[4] Appellant's claim for monetary damages runs counter to the holding in *Provens v. Stark Cty. Bd. of Mental Retardation & Developmental Disabilities*, 64 Ohio St.3d 252, 261 (1992), that "public employees do not have a private cause of civil action against their employer to redress alleged violations by their employer of policies embodied in the Ohio Constitution when it is determined that there are other reasonably satisfactory remedies provided by statutory enactment and administrative process." Here, R.C. 124.34(C) provides a satisfactory remedy that appellant may appeal his order of removal to the civil service commission, and may appeal the commission's decision to the court of common pleas. *See State ex rel. Turner v. Houk*, 2007-Ohio-814, ¶ 8-9 (demoted civil service employee had an adequate remedy in the ordinary course of law through administrative appeal under R.C. 124.34).

Eleventh District expressly held that the trial court erred in vacating the suspension on due process grounds, finding that the statutory protections under R.C. 737.19(B) were "adequate to meet constitutional standards of due process." *Id.* at ¶ 19. Thus, *Denvir* was decided not on due process, but on the grounds that the village authorities failed to follow their own procedures. *Id.* at ¶ 27. Because appellant's claim is only that his due process rights were violated, *Denvir* is inapposite. The only question we must answer then is whether the law allows a claim for declaratory judgment for a violation of due process regarding compliance with the statutory requirements of R.C. 124.34 and 124.40.

{¶ 54} To that end, R.C. 2721.03 provides,

[A]ny person whose rights, status, or other legal relations are affected by a constitutional provision, statute, rule as defined in section 119.01 of the Revised Code, municipal ordinance, township resolution, contract, or franchise may have determined any question of construction or validity arising under the instrument, constitutional provision, statute, rule, ordinance, resolution, contract, or franchise and obtain a declaration of rights, or other legal relations under it.

{¶ 55} "The three essential elements for declaratory relief are that (1) a real controversy exists between the parties, (2) the controversy is justiciable in character, and (3) speedy relief is necessary to preserve the rights of the parties." *Toledo v. State*, 2022-Ohio-1192, ¶ 23 (6th Dist.), quoting *Wymsylo v. Bartec, Inc.*, 2012-Ohio-2187, ¶ 31. A trial court "properly dismisses a complaint seeking declaratory relief if 'there is (1) neither a justiciable issue nor an actual controversy between the parties requiring speedy relief, or (2) the declaratory judgment will not terminate the uncertainty or controversy.'" *Twang, LLC v. Cincinnati*, 2024-Ohio-6077, ¶ 89 (1st Dist.), quoting *M6 Motors, Inc. v.*

23.

*Nissan of N. Olmsted, LLC*, 2014-Ohio-2537, ¶ 19 (8th Dist.); *Cool v. Frenchko*, 2022-Ohio-3747, ¶ 18 (10th Dist.).

{¶ 56} "[T]he abuse-of-discretion standard applies to the review of a trial court's holding regarding justiciability; once a trial court determines that a matter is appropriate for declaratory judgment, its holdings regarding questions of law are reviewed on a de novo basis." *Arnott v. Arnott*, 2012-Ohio-3208, ¶ 13. An abuse of discretion connotes that the trial court's judgment is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 57} Here, appellant's fourth claim can be interpreted in one of two related ways, neither of which states a claim upon which relief can be granted. On the one hand, it could be seen as a declaratory judgment action, the object of which is to enforce his due process rights. On the other hand, it could be seen as a declaratory judgment action to protect his property interest in his position as the fire chief from deprivation without due process. The difference is subtle, but in the former the focus is on the due process rights themselves, whereas in the latter the focus is on his right to his position as the fire chief.

{¶ 58} The complaint suggests that the declaratory judgment claim is to enforce appellant's due process rights since he seeks a declaration that appellees have violated Article I, Section 16 of the Ohio Constitution. Ohio courts, however, have not recognized an independent cause of action for violation of that constitutional right.

{¶ 59} For example, in *PDU, Inc. v. City of Cleveland*, 2003-Ohio-3671 (8th Dist.), a nightclub that was temporarily shut down by the City of Cleveland sued the city alleging violations of the rights to equal protection, free speech, and due process under

24.

the Ohio Constitution. A jury awarded the nightclub $345,000 in damages. *Id.* at ¶ 14. On appeal, the Eighth District reversed, holding that "because Sections 2, 11, and 16 of Article I of the Ohio Constitution are not self-executing provisions, they do not create independent causes of action. Moreover, unlike the federal system where 42 U.S.C. § 1983 creates a private cause of action to remedy violations of the United States Constitution, there exists no statute in Ohio analogous to Section 1983." *Id.* at ¶ 27.

{¶ 60} Likewise, the Fifth District in *Autumn Care Center, Inc. v. Todd*, 2014-Ohio-5235 (5th Dist.), concluded that Article I, Section 16 was not self-executing and did not provide a private cause of action. In that case, the Ohio Department of Health issued citations, two of which were contested, to a skilled nursing home facility. *Id.* at ¶ 1. The skilled nursing home facility filed a complaint for a declaratory judgment, "seeking a declaration that [the Ohio Department of Health] violated its rights to due course of law and equal protection under the Ohio Constitution." *Id.* at ¶ 2. The trial court dismissed the complaint for failure to state a claim upon which relief could be granted. *Id.* On appeal, the Fifth District affirmed. It reasoned that "it is clear that the equal protection and due course of law clauses in the Ohio Constitution are statements of fundamental ideals upon which governments are created. As with Article I, Section 1, the language in Article I, Sections 2 and 16, 'lacks the completeness required to offer meaningful guidance for judicial enforcement.'" *Id.* at ¶ 14, quoting *State v. Williams*, 88 Ohio St.3d 513, 523 (2000). The Fifth District thus agreed with the holding in *PDU* that Article I, Section 16 of the Ohio Constitution does not create an independent cause of action. *Id.*

25.

{¶ 61} Appellant, in response, cites *Riverside v. State*, 2014-Ohio-1974, ¶ 1-3 (2d Dist.), in which the Second District held that the trial court erroneously dismissed the City of Riverside's complaint for a declaratory judgment that a statute violated the Equal Protection Clauses of the United States and Ohio constitutions. In that case, the State argued that the complaint must be dismissed because the Equal Protection Clause of the Ohio Constitution, Article I, Section 2, is not self-executing and does not provide substantive rights. *Id.* at ¶ 31. The Second District rejected this, reasoning that numerous courts have permitted declaratory judgment actions to contest the constitutionality of a statute. *Id.* at ¶ 34. Further, it distinguished the case before it from *PDU*, noting that the City of Riverside was not attempting to bring a private action to recover a judgment against the State, but was instead attempting to challenge the constitutionality of a particular statute enacted by the General Assembly. *Id.* at ¶ 38, 40. It therefore held that *PDU* was "irrelevant." *Id.* at ¶ 40.

{¶ 62} Upon review, the present case is most like *Autumn Care Center*. Here, appellant is seeking a declaration that his due process rights were violated by appellees' conduct. He is not seeking to challenge the constitutionality of R.C. 124.34 or 124.40 as was the case in *Riverside*. Thus, to the extent that appellant presents a cause of action solely for the violation of his due process rights under Article I, Section 16 of the Ohio Constitution, we hold that Article I, Section 16 is not self-executing, and no such private cause of action exists.

{¶ 63} Furthermore, even if such a claim existed, declaratory judgment would not be appropriate because speedy relief is not necessary to preserve the rights of the parties.

26.

{¶ 64} In *Logan v. Champaign Cty. Bd. of Elections*, 2025-Ohio-297, ¶ 52 (2d Dist.), the Second District affirmed the Civ.R. 12(C) dismissal of Logan's declaratory judgment action, concluding that it did not set forth the necessary elements of a declaratory judgment claim. In that case, Logan sought a declaratory judgment relative to her removal as the Deputy Director of the Champaign County Board of Elections. *Id.* at ¶ 2-3. Among other things, the Second District held that because "Logan did not allege an ongoing harm or potential for future harm, but rather, alleged past harm—e.g., the termination of her employment . . . [her] complaint did not demonstrate that speedy relief was necessary to preserve her rights, as the actions about which she complained had occurred in 2022, and therefore the damage, if any, had already occurred." *Id.* at ¶ 50.

{¶ 65} Similarly, in *Bunting v. Watts*, 2018-Ohio-3357, ¶ 19 (5th Dist.), the Fifth District affirmed the trial court's dismissal of a declaratory judgment action where all the actions about which the plaintiff complained had occurred ten years earlier "and the damage, if any, has occurred." The court held that the complaint "[did] not meet that third element for a declaratory judgment because it does not allege the speedy relief afforded by a declaratory action is necessary to preserve whatever rights might be lost." *Id.*

{¶ 66} Here, as in *Logan* and *Bunting*, appellant is seeking declaratory judgment that his due process rights were violated over acts that have already occurred and are not in danger of occurring again since he is no longer the Fire Chief. He, therefore, has not alleged facts demonstrating that speedy relief is necessary to preserve his rights, and consequently the dismissal of his claim is appropriate.

27.

{¶ 67} Alternatively, if his claim is for a declaratory judgment seeking a declaration that he was wrongfully removed as the Fire Chief without due process, his claim is really that appellees' conduct violated the procedures of R.C. 124.34 and 124.40. In *Binder v. Cuyahoga Cty.*, 2020-Ohio-5126, ¶ 15, the plaintiffs brought a claim for a declaratory judgment that the county had violated R.C. 124.34. The Ohio Supreme Court rejected the plaintiff's arguments, stating that it "[saw] no language in R.C. 124.34, or elsewhere in R.C. Chapter 124, demonstrating the General Assembly's intent to authorize a civil action in common pleas court for violations of the statute." *Id.* at ¶ 19. The court concluded, therefore, that the plaintiffs' complaint for declaratory relief "[did] not state a cause of action for which relief may be granted." *Id.* at ¶ 22.

{¶ 68} The same reasoning applies here. R.C. Chapter 124 does not authorize appellant's declaratory judgment action. Instead, it offers a remedy whereby appellant can first appeal the Order of Removal to the Civil Service Commission and then to the court of common pleas; an avenue that appellant has availed himself of as stated by the parties in their appellate briefs.

{¶ 69} For these reasons, regardless of his theory of relief, appellant's fourth claim for violation of due process rights does not state a cause of action for which relief may be granted, and the trial court did not err in dismissing the claim. Accordingly, his fourth assignment of error is not well-taken.

## Conclusion

{¶ 70} In sum, appellant alleged sufficient facts that, if proven, would satisfy all the elements of a claim for defamation. The trial court, therefore, erred when it granted

28.

appellees' motion for judgment on the pleadings as to that claim. In contrast, appellant's claims for intentional infliction of emotional distress, retaliation, and violation of due process rights all fail to state a claim upon which relief may be granted and were properly dismissed by the trial court. Accordingly, the trial court's judgment is affirmed, in part, and reversed, in part. The trial court's judgment dismissing appellant's first, second, fourth, fifth, and sixth claims is affirmed. Its judgment dismissing appellant's third claim for defamation is reversed, and the matter is remanded to the trial court for further proceedings on that claim only. The parties are ordered to share the costs of this appeal evenly pursuant to App.R. 24.

Judgment affirmed, in part,
reversed, in part, and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

_____
JUDGE

Myron C. Duhart, J.

Charles E. Sulek, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.